[No. 14273.   Department One. — September 11, 1891.]

FRED S. GOULD, RESPONDENT, v. O. A. STAFFORD, APPELLANT.

RIPARIAN RIGHTS — IRRIGATION — VARYING STAGE OF STREAM — CAPACITY OF IRRIGATING FLUME. — Where the quantity of the waters of a creek, that may be used by a riparian proprietor for purposes of irrigation without interference with the rights of other riparian owners, depends upon the stage of the water in the creek, which varies in different years, as well as at different seasons of the same year, such proprietor may lawfully construct a flume of sufficient capacity to convey from the stream to his land all the water that he or his lessees might be entitled to use for irrigation at any season of any year.

ID. — USE OF FLUME BY LESSEE — NUISANCE — LIABILITY OF LESSOR. — The flume not being a nuisance per se, the riparian proprietor, after he has leased the land, has no power or right to control the use of the flume by the lessee, and is not responsible for any unlawful or excessive use of the stream by means of it, for purposes of irrigation, unless the lease contemplated or necessarily involved a nuisance or a wrongful use.

ID. — PRESUMPTION — INTENTION OF LESSOR — FINDING AGAINST EVIDENCE. — There can be no presumption, in the absence of evidence, that the lessor intended or contemplated an unlawful use of the flume by his lessee; and a finding that the lessor diverted or misapplied or wasted the waters of the stream, or caused, authorized, or promoted its misapplication or waste, is not sustained by the evidence, where it merely appears that his lessee misapplied the water by means of the flume constructed by the lessor.

ID. — NATURE OF RIPARIAN RIGHTS — SEVERANCE FROM LAND. — The right of a riparian proprietor to the flow of a stream of water over his land is an incident of his property in the land, is annexed to the land, and considered part and parcel of it, but may be severed or segregated from the land by grant, condemnation, or prescription.

ID. — GRANT OF RIPARIAN RIGHTS — SUBSEQUENT GRANT OF LAND. — A grant of all or any portion of riparian rights, as such, to a water company, severs the rights granted from the land, and disables the riparian proprietor from granting them with the land to a subsequent purchaser.

ID. — PROTECTION OF REVERSIONARY RIGHT — EFFECT OF ABSOLUTE GRANT. — If a grant of riparian rights is only for a limited time or upon condition subsequent by which it may be terminated, the grantor may maintain an action to protect his reversionary right against the acquisition of a prescriptive title, but can maintain no action if his grant was absolute and unconditional.

ID. — EVIDENCE — PAYMENT OF EXPENSES OF LITIGATION — CROSS-EXAMINATION — REASON FOR PAYMENT. — In an action for damages for the diversion of water, where one of the plaintiff's witnesses has testified that he is a member and officer of a water company which pays the expenses of the litigation, it is error to refuse to allow the defendant to ask the witness, on cross-examination, why such company pays the expenses of the litigation. Such question is proper for the purpose of showing the interest, bias, or prejudice of the witness.

APPEAL from a judgment of the Superior Court of Santa Barbara County, and from an order denying a new trial.

The facts are stated in the opinion.

*B. F. Thomas,* for Appellant.

*John J. Boyce,* for Respondent.

VANCLIEF, C. — Action for damages resulting from the alleged diversion of water by defendant from Montecito Creek, in the county of Santa Barbara, and for a perpetual injunction against such diversion in the future. Both parties claim to be riparian proprietors upon both sides of the creek, the defendant's land being about one mile above that of the plaintiff.

The complaint charges that in January, 1882, by means of a dam across a main branch of the creek (the Cold Spring branch), and certain flumes and ditches erected and maintained by the defendant, he "prevented a portion of the waters naturally flowing in said creek from flowing down to and reaching plaintiff's land and premises; that defendant wrongfully and unlawfully has continuously since said time appropriated

and taken for his own use a large portion of the waters naturally flowing in said stream as aforesaid, and has wasted said water and applied the same to unlawful purposes, and prevented the entire quantity so taken from again returning to the natural bed or channel of said Montecito Creek or any of its branches, and said waters have, by means of said unlawful diversion, been wasted and lost, and have not reached the land of plaintiff"; whereby plaintiff's land has been deprived of the flow of the water and of the use thereof for necessary or any purposes, and in the seasons of scarcity of water the bed of said creek, within the premises of plaintiff, has become dry for a long period, and plaintiff has been deprived of the use of any water of said creek for domestic or other reasonable and lawful uses, to the damage of plaintiff in the sum of five thousand dollars, and that defendant threatens to continue, and unless restrained will continue, such unlawful diversion to the lasting and irreparable injury of plaintiff and his land.

The amended answer of the defendant, on which the case was tried, denies that the waters of said creek naturally flow through plaintiff's land later than the month of June, except in extraordinarily wet seasons, and specifically denies all the wrongful acts charged in the complaint.

The answer alleges the defendant's riparian ownership of land as above stated, and that on November 19, 1881, the defendant leased to Ah Young, a Chinaman, a part of his riparian land on the west side of the creek, and sets out the lease as follows: —

"Agreement in consideration of the sum of one hundred dollars ($100) per annum, to be paid semi-annually in advance. I agree to lease to Ah Young my field of eight (8) acres, more or less, lying on the west side of Cold Spring Creek, formerly known as the Sanchez land, for the term of five (5) years from date of this agreement; I furthermore agree to build a six-inch flume to carry water from the creek to the land, he, Ah Young,

agreeing to keep said flume and the fence now about the land in good repair as they are at present.

"O. A. STAFFORD.

[Chinese mark] "AH YOUNG.

"MONTECITO, S. B. Co., CAL., November 9, 1881."

The answer further alleges that defendant did not agree to furnish the lessee any particular quantity of water, or any water, except such as the lessee was entitled to by the terms of the lease, viz., so much as was appurtenant to the land leased by reason of its being riparian to the creek; that Ah Young took possession of the leased premises on November 9, 1881, and he and his assigns continued to occupy the premises under the lease until November 9, 1886.

It is also alleged in the answer "that no notice was given to defendant before the commencement of this action to abate any dam in said creek, or that the waters of said creek which flowed into said flume were being, or had been, wasted or misapplied."

As to the alleged riparian ownership of defendant, and the lease and possession of the lessee under it, the court found the answer to be true. As to the alleged want of notice to defendant there is no finding. As to damages, the plaintiff withdrew all claim except for nominal damages, and the court found only nominal damages. But upon all other material issues the court found for the plaintiff, and gave judgment against defendant for nominal damages, and costs assessed at $263.60, and perpetually enjoined and commanded him, substantially, as follows:—

1. From wasting, or permitting to be wasted, any portion of the waters of said creek or the branches thereof;

2. From diverting or using, or permitting to be diverted or used, any of said waters upon any other land than the riparian land of the defendant;

3. From diverting, or permitting to be diverted, for the purposes of irrigation, all the waters of said creek or

any of its branches, "at any season of the year for purposes of irrigation, and from interrupting or interfering with the said supply of water so enjoyed by the plaintiff for domestic and household purposes, and for watering his stock, and from permitting the same to continue unrestored, and from permitting to continue on his land or at the dam erected by him any means or appliances whereby the said uses of plaintiff therein are or may be diverted or interfered with."

4. In case the defendant should divert and use a portion of the waters of said stream for the purpose of irrigating his riparian land, he is commanded, by "substantial and proper artificial means and methods," to conduct back to the channel of the creek, above the lands of plaintiff, all surplus water not necessary for such irrigation and not being used therefor, so that the same may be restored to the natural channel above the lands of plaintiff without waste or unnecessary diminution.

5. It is adjudged that the use, by the defendant, of the waters of said stream for the purpose of irrigation is subordinate to the right of the plaintiff to use the same for domestic and household purposes and the watering of stock.

The case was here on a former appeal (77 Cal. 66), but the questions now presented are different from those decided on the former appeal.

The defendant appeals from the judgment, and also from an order denying his motion for a new trial.

1. The appellant contends that the evidence does not justify the finding that the defendant by any means diverted, misapplied, or wasted any water from the Cold Spring branch of the creek; or that he caused, authorized, or promoted any such misapplication or waste by others.

The evidence tends to prove no other wrongful or excessive diversion than that from the Cold Spring branch through the flume to the garden leased to Ah Young; and the only evidence claimed to have any ten-

dency to prove that defendant caused or authorized such diversion, or any waste or misapplication of the water, is, that he executed the lease to Ah Young, and constructed the flume according to the terms of the lease; and also that he employed one Chico to construct the flume, and agreed that Chico should have a partial use of the flume to convey water to his land, situate below the Chinese garden, in consideration of his work upon the flume. The flume tapped the stream above defendant's land, and defendant acquired the right of way for it upon the land of others. There never was any permanent dam across the stream to divert the water into the flume. In the early part of each season, when the stream carried a large quantity of water, very little, if any, obstruction was required to turn sufficient water into the flume to fill it. A few rocks thrown into the stream was then sufficient to turn water into the flume to its full capacity. Later in the season, as the water in the stream diminished, the obstruction was increased until the lowest stage of the water, when a dam composed of stones, brush, and mud was extended entirely across the stream. This dam was washed away in the winter or spring of each year.

The defendant testified that the dam and obstructions by which the water was turned into the ditch were annually constructed by the lessee of the Chinese garden and Chico; and that he (defendant) neither assisted in their construction nor directed or advised as to the manner or extent thereof, nor as to the quantity of water to be diverted thereby. This testimony is corroborated by that of other witnesses, and there is no evidence to the contrary. Nor is there any evidence tending to prove that Chico was the agent or servant of the defendant for any other purpose than the construction of the flume, or that defendant ever controlled, aided, or advised Chico in regard to diverting or using the water of the stream. It appears that Chico extended the flume from the Chinese garden to his place lower down the creek, where he irrigated a strawberry bed and an orchard of pear-

trees; but there is no evidence tending to prove whether or not he owned the land thus occupied and irrigated by him, or whether it was riparian to the creek, or how much water he used. Upon cross-examination of Packard, the principal witness for plaintiff, defendant's counsel asked him: What portion of the water flowed into the flume that Chico used? This question was objected to by plaintiff's counsel as irrelevant and immaterial, and the court sustained the objection. The defendant also testified that he was never notified before the commencement of this action that more water was being diverted by means of the dam and flume than his lessee, and Chico were entitled to divert, nor that the water diverted by them was misapplied or wasted, and his testimony in this respect was not disputed.

There is no question that the Chinese garden was riparian to the creek, and that the owner thereof, or his lessee, was entitled to such reasonable use of the waters of the creek to irrigate the same as was consistent with the rights of other riparian owners. The evidence shows that the quantity of water that might be so used at any given time depended upon the stage of the water in the creek, which varied in different years, as well as at different seasons of the same year. It follows that defendant had a perfect right to construct a flume to convey water from the stream to his land, for his own use or for the use of his lessee, of sufficient capacity to carry all the water that he or his lessees might be entitled to use at *any* season of *any* year. The mere capacity of the flume did not concern other riparian owners, as they could object to only an unlawful or excessive use of it. The flume was not a nuisance *per se;* and after the defendant leased it, he had no more power or right to control the use of it by the lessee, than he had to control the use of the land and other fixtures leased. The lessee alone was responsible for his wrongful use of it by which others were injured. " A landlord is not responsible to other parties for the misconduct or injurious acts of his tenants to whom his estate has been leased for a lawful and proper

purpose, when there is no nuisance or illegal structure upon it at the time of the lease. (*Kalis* v. *Shattuck,* 69 Cal. 593, and authorities there cited.)    The relation of Chico to the defendant, after the flume was constructed, was either that of lessee or licensee of the flume alone, in consideration of his labor in constructing it; and since the defendant neither authorized nor participated in a wrongful use of the flume by Chico, he was not liable, unless the lease or license contemplated or necessarily involved a nuisance or a wrongful use. (*Gwathney* v. *Little Miami R. R. Co.,* 12 Ohio St. 92; Wood on Landlord and Tenant, sec. 539.)    As the flume was not a nuisance *per se,* and was, unquestionably, adapted to a lawful use, there can be no presumption against the defendant, in the absence of evidence that he intended or contemplated an unlawful use of it by his lessee or licensee.

For the reasons above stated, I think the finding under consideration is not justified by the evidence.

2. Appellant's counsel further contends that the twelfth finding is not justified by the evidence.    That finding is to the effect that, by the diversions of the waters complained of, " the plaintiff has suffered material damage, and the rights of plaintiff as a riparian proprietor have been infringed and injured, and are threatened with further irreparable injury, as far as said riparian rights are concerned."

In support of this point it is claimed that the evidence shows that plaintiff had no riparian rights that could have been infringed or injured; that prior to plaintiff's purchase of the land described in his complaint as to which he claims riparian rights, his grantors had granted to Montecito Water Company (a California corporation) all riparian rights to water appurtenant to or parcel of said land, in consideration of certain shares of stock in that corporation, which shares of stock entitled the holder thereof to a certain quantity of water in proportion to the number of shares, to be conveyed to the land through pipes or aqueducts by the corporation; and that, during

the time that defendant is alleged to have diverted water from the creek, the Montecito Water Company, by virtue of that grant, was diverting water from the same stream, and conveying such portion of it to plaintiff's land as plaintiff was entitled to in consideration of the grant.

To prove this alleged grant, the defendant put in evidence a long and complicated written agreement between riparian proprietors on the creek (twenty-three in number, including plaintiff's grantors), of the first part, and the Montecito Water Company, of the second part. Among other things, this agreement purports to be a grant by the parties of the first part to the Montecito Water Company of all the rights of the grantors to the waters of the creek for the consideration above stated.

In addition to this, the evidence tended to prove that the plaintiff regarded the agreement as valid and binding upon him; that as successor to his vendors he had applied to the corporation to have their stock transferred to him, and that it had been so transferred on the books of the corporation; and that he had received on his land water from the corporation, for domestic and other uses, during the time he complains of having been deprived of water by the defendant; but whether, during all that time, he received from the corporation as much water as he was entitled to by the agreement does not clearly appear.

The agreement purports to be a substitute for a lost agreement, to which it refers, and in some undefined respects to be different from the lost agreement; besides, it is not clear that all the parties to the lost agreement are parties to the substituted agreement. It is also quite apparent upon the face of the agreement that in order to construe it and determine its effect, if any effect it can have in this action, it will be necessary to consider the circumstances under which it was executed, and the acts of the parties under it, of which there was not sufficient evidence upon the trial. (Gould on Waters, sec. 319.)

In view of the record here, I think it cannot be said that the evidence does not justify the finding that

the plaintiff has riparian rights which were infringed by the diversions of water complained of, or that the court improperly declined to give to the agreement above referred to, as presented on the trial, the effect claimed for it by counsel for appellant, although it may turn out, upon a proper construction of that agreement (which is not attempted here), in the light of all the circumstances which may be lawfully considered as aids to such construction, that the agreement may have the effect claimed for it by counsel for appellant; and for the purposes of a new trial, which must be granted upon other grounds, it is proper to pass upon some of the questions of law discussed by counsel relating to the grant of riparian water rights, and the effect thereof.

The right of a riparian proprietor to the flow of a stream of water over his land is an incident of his property in the land, is annexed to the land, and considered part and parcel of it (Civ. Code, sec. 662; *St. Helena Water Co.* v. *Forbes,* 62 Cal. 182), but may be severed or "segregated" from the land by grant, by condemnation, or by prescription. (*Alta Land and Water Co.* v. *Hancock,* 85 Cal. 219; *Alhambra Co.* v. *Mayberry,* 88 Cal. 69; Washburn on Easements, 12, 385; Angell on Watercourses, secs. 96, 141, 146.) If, therefore, the grantors of the plaintiff, while they owned the land, granted to the corporation (Montecito Water Company), "its successors and assigns," all or any portion of their riparian rights to the waters of Montecito Creek, they thereby, to the extent of such grant, severed from the land their riparian rights, and disabled themselves to grant such rights to the plaintiff; and consequently their grant of the *land* to the plaintiff did not pass the riparian rights theretofore granted to the Montecito Water Company, without which the plaintiff is not entitled to complain that those rights have been infringed by the defendant. In other words, the plaintiff is not entitled to maintain an action for the protection of rights which he has not.

It is suggested, however, that even in this supposed

hypothetical case the plaintiff would have a reversionary right to be protected against the acquisition by defendant of a right by prescription. But this would depend upon the terms and conditions of the grant to the Montecito Water Company. If that grant is only for a limited term, or is upon a condition subsequent by which it may be terminated, the plaintiff would be entitled to maintain an action to protect his reversionary right. But if the grant is absolute and unconditional, the plaintiff has no reversionary interest. That such a grant may be absolute and unconditional appears by the authorities above cited. But for reasons above stated, it is not intended to intimate, in this opinion, what construction should be given to the written agreement above referred to, in any respect.

3. G. H. Gould was called as a witness for plaintiff, who, after testifying in chief to facts material to plaintiff's case, on cross-examination testified that he is the brother of plaintiff and one of plaintiff's attorneys in this action; that he is a member and the president of the Montecito *Valley* Water Company; and that the last-named company pays the expenses of the litigation. Thereupon he was asked the following question: Why does the Montecito Valley Water Company pay the expenses of this litigation? Plaintiff's counsel objected to this question on the ground that it was irrelevant and immaterial, and the court sustained the objection, to which ruling defendant's counsel excepted. It does not appear by the record that the Montecito *Valley* Water Company is identical with or successor to the Montecito Water Company; yet for the purpose of showing the interest, bias, and prejudice of the witness, the question was proper on cross-examination, and the court erred in sustaining the objection to it. Under the circumstances, a liberal cross-examination of the witness should have been allowed.

I think the judgment and order should be reversed, and the cause remanded for a new trial.

BELCHER, C., and TEMPLE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

Hearing in Bank denied.