Argued May 4, decided June 14; rehearing denied July 12, 1910.

## CARNES v. DALTON.

[110 Pac. 170; 110 Pac. 174.]

WATERS AND WATER COURSES—IRRIGATION DITCHES—RIGHTS OF PARTIES.
1. The fact that a co-owner of an irrigation ditch with the contract right to appropriate a certain quantity of water from the ditch elected to take less than such quantity did not justify a complaint by one to whom the owners had granted the right to use the ditch to convey water in excess of the quantity to which the owners were entitled.

WATERS AND WATER COURSES—IRRIGATION RIGHTS—ADJUDICATION OF RIGHTS—PERSONS CONCLUDED.
2. One not a party to a suit to determine contract rights in an irrigation ditch is not bound by the decree rendered therein, and his rights must be determined as if such suit had not been instituted.

WATERS AND WATER COURSES—IRRIGATION DITCHES—RIGHTS OF PARTIES.
3. One entitled by grant to use an irrigation ditch to convey waters in excess of the amount required for the use of the grantor has no right to commit an act occasioning injury to the grantor, and the latter need not see that sufficient water is flowing in the ditch to supply the needs of the grantee.

TENANCY IN COMMON—IRRIGATION DITCHES—RIGHTS OF PARTIES—
    MAINTENANCE.

4. Where several persons are tenants in common in an irrigation ditch and dam at its source, each is responsible in proportion to his interest for the maintenance and repair of the dam and ditch, and in case of default of one or more, the others may make the repairs for which the defaulting party is liable for his *pro rata*, but such a failure by one does not justify another in making up the loss occasioned by drawing off the water from the former.

WATERS AND WATER COURSES—IRRIGATION DITCHES—PRIORITY OF RIGHT
    —INTERFERENCE.

5. Where the grantee of a right to use an irrigation ditch to convey water in excess of a stated amount required for the use of the grantors, caused a depletion of the waters in the ditch without providing for an additional supply to make up the deficiency, so that the grantors did not receive the amount to which they were entitled, the rights of one of the latter were involved to his injury, and he could sue for relief.

WATERS AND WATER COURSES — IRRIGATION DITCHES — INTERFERENCE
    WITH WATER RIGHTS—PARTIES.

6. One of the grantors could sue without making the other grantors parties to the suit, as a determination of the rights of the other grantors was not essential to determination of the controversy within Section 41, B. & C. Comp., relating to parties.

TENANCY IN COMMON — IRRIGATION DITCHES — INTERFERENCE WITH
    WATER RIGHTS—PARTIES.

7. A tenant in common in an irrigation ditch or water right may sue for unlawful interference therein by another tenant.

WATERS AND WATER COURSES—INTERFERENCE WITH WATER RIGHTS—
    INJUNCTION.

8. Where a grantee of the right to use an irrigation ditch to convey water in excess of a stated amount for the use of the grantor insisted on his right to deplete the flow of the waters in the ditch to the injury of the grantor, the latter could sue to restrain the continued interruption under Section 394, B. & C. Comp., providing that one claiming an interest adverse to plaintiff may be made a party defendant.

WATERS AND WATER COURSES—IRRIGATION DITCHES—RIGHTS OF PARTIES.

9. Plaintiff's predecessor in interest and a third person owning an irrigation ditch with a water right contracted with defendant for the enlargement of the ditch, subject to the right of plaintiff's predecessor and the third person, to appropriate a specified quantity of water in the ditch, and subject to the right of the defendant to the surplus. A decree in a suit, to which neither plaintiff nor his predecessor was a party, gave the third person, as against defendant, a specified quantity of water. Plaintiff had as against defendant a right to a specified quantity. *Held,* that the decree was effective as between the third person and defendant, and under it the third person was first entitled to the quantity awarded him, and the surplus, when not used by plaintiff to the extent of his right, belonged to defendant, and when the water in the ditch was only sufficient to supply the quantity to which plaintiff was entitled as against defendant, then as between them, plaintiff was entitled to divert the water, but when water in excess of that required by the third person and plaintiff was in the ditch, the excess must be permitted to flow to defendant's premises.

From Baker: WILLIAM SMITH, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit by Sam Carnes and W. A. Carnes to enjoin James Dalton from interfering with the diversion of water by plaintiffs from a company ditch, leading from North Powder River in Baker County. This ditch or canal, known as the "company ditch," is about one-half mile in length from its source to the division boxes, one of which, known as the "Kelsey tap," conveys water to plaintiffs' premises, being used by them as tenants in common with Kelsey. The other, known as the "Dalton tap," carries water claimed by defendant, being owned by him in company with McPhee and others. The company ditch, to the point of distribution, is about eight feet wide, and when used to its full capacity the water flowing therein is from 12 to 18 inches in depth. It is claimed, and the trial court finds, that the canal carries about 2,200 inches of water. Its exact carrying capacity is immaterial, however, the quantity of water not being particularly involved, for it is admitted by the pleadings, and unquestioned in the evidence, that plaintiffs have the first right as against defendant to one-eighth of whatever the company canal will carry, and it seems to be admitted that this quantity is represented by the amount that will flow through a box one foot square (no pressure being given) placed in the side of the canal as hereinafter described. Assuming this to be correct, it will be seen that the carrying capacity of the company ditch is much less than claimed, but, as indicated, such feature cannot affect the result herein.

Plaintiffs are the owners and in possession of the S. W. 1/4 of the S. W. 1/4 of section 32, township 6 S., range 39 E., W. M., and the N. 1/2 of the N. W. 1/4 of section 5, and 10 acres situated in the N. W. 1/4 of the N. E. 1/4 of section 5, adjoining the same, all in township 7 S., range 39 E., W. M., containing 120 acres of

agricultural lands, of which 90 acres are cultivated to orchards, garden, etc., such tract having, since the year 1886, been irrigated by means of water conveyed through the company ditch mentioned, in the right to which plaintiffs, together with L. S. Kelsey, are tenants in common, and prior in time and right to defendant.

The defendant owns the W. ½ of section 3; the E. ½ of the S. E. ¼., and the S. ½ of the N. E. ¼ of section 4; the S. E. ¼ of the S. E. ¼ of section 10; the W. ½ of the N. E. ¼ of section 2; and the N. W. ¼ of section 10, all in township 7 S., range 39 E., W. M., in Baker County,. Oregon, of which he has about 200 acres in alfalfa and other crops; and his title to which it is claimed relates back to the year 1880.

Prior to 1888 the plaintiffs' predecessors in interest and L. S. Kelsey were the exclusive owners of the company ditch, right of way and water right through it. During that year they entered into an agreement with the defendant, his co-owners and their predecessors in interest, whereby the ditch was enlarged to double its capacity—that is, to eight feet in width—and through which it was understood defendant and his co-owners should thereafter have the right to convey water appropriated by them, which right it then was, and still is, understood and recognized, as being subsequent in time and inferior in right to Kelsey and Wilson, the latter being the predecessor in interest of plaintiffs; and that Kelsey and Wilson, and their successors in interest, should at all times, when the supply of water was inadequate for the accommodation of all parties, have the first right to the use thereof through such ditch. As to the ditch, it was recognized that this defendant and his co-owners should own one-half, and Kelsey and Wilson one-half, the division of the waters flowing therein to be at a point from which defendant and his co-owners should extend a ·canal in the direction of and to their premises,

opposite to which the ditch of Kelsey and Wilson continued in the direction of and to their premises, as before the enlargement of the upper and company portion thereof.

A dispute arose between Kelsey and his co-owners, resulting in the institution of a suit by one of the parties (McPhee) against Kelsey. This cause was tried and thereafter appealed to this court (*McPhee* v. *Kelsey*, 44 Or. 193: 74 Pac. 401: 75 Pac. 713), where a decree was entered, modifying the judgment of the trial court. Subsequently this decree was vacated, and the cause remanded for a new trial (45 Or. 290: 78 Pac. 224), after which further testimony was taken, findings made, and a decree entered, the purport of which was to hold that the plaintiffs therein, McPhee, Dalton, *et al.,* were the owners of an undivided one-half interest in the canal to the point of divergence of the extended ditches of the respective parties, and that Kelsey was the owner of the right to the remaining one-half; and it was further decreed that, at the point of divergence mentioned, the canal being eight feet wide, a box should be placed, and so arranged that a body of water four feet in width should flow into the McPhee-Dalton ditch, and a like body of water flow into the Kelsey ditch. From this no appeal was taken, and the decree became final. In that suit neither these plaintiffs nor their predecessors in interest were parties. The plaintiffs' grantors, however, received their supply of water from year to year through the opening in the box, placed there by order of the court for Kelsey's interest. About one year prior to the commencement of this suit plaintiffs purchased the real property and water right mentioned, under the conveyance of which it appears that plaintiffs own, what is termed throughout the proceedings, a "one foot" in width interest, meaning, by this unusual and indefinite term, the quantity of water represented by one-eighth of the width

of the canal, or an interest in a quantity equal to one-eighth of the entire flow of water capable of being conducted through same. This quantity, plaintiffs decided, for the purpose of convenience in measuring, to take from a point about 10 feet above the division gate, or above the point where Kelsey and Dalton diverted water; for which purpose they inserted a box one foot square, turning the water around the head gate into the ditch, used for a considerable distance in common by them and Kelsey, through which water was conveyed to the full carrying capacity of the box, weir measurement. In order to get the required amount through the box, it was necessary that the water be raised at the point where it flowed through the Dalton and Kelsey division box. Kelsey, asserting the right to raise the water, for the purpose of irrigating his lands, closed his and defendant's head gate. In this manner plaintiffs received the quantity desired for irrigation. There was not, at the time, sufficient water flowing from the main channel of the creek into the company ditch to supply all parties, due principally to the dam in the creek, at the head of the canal, having partly washed away. Dalton removed one of the four-foot boards, placed there by Kelsey, from his head gate, which, with the limited quantity of water then in the ditch, depleted the flow in plaintiffs' box to such an extent that it could not reach their premises, resulting in this suit. A hearing was had before a referee, and upon the testimony taken by him the learned trial court found that, as a legal effect of the acts disclosed by the evidence, Dalton was in no wise interfering with plaintiffs' rights; that there was an abundant supply of water in the river for all parties, and that plaintiffs could have had an adequate quantity thereof by turning the same into the ditch; that such injury as was occasioned was the result of wrongful acts on the part of Kelsey, not a party to the suit, and not by reason of

any claim or doings of defendant, resulting in a dismissal of the suit, and in this appeal.          REVERSED.

For appellants there was a brief over the names of *Messrs. Olmsted & Strayer,* with an oral argument by *Mr. M. L. Olmsted.*

For respondent there was a brief over the names of *Messrs. Lomax & Anderson,* with an oral argument by *Mr. LeRoy Lomax.*

MR. JUSTICE KING delivered the opinion of the court.

1. The facts above stated are practically conceded by the pleadings, as well as by defendant's testimony, only the legal effect thereof being in question. Defendant admits removing the four-foot board from his head gate, when there was no surplus water in the company ditch, occasioning thereby the depletion complained of, and at the same time expressly recognizes that plaintiffs' water right through the ditch is prior in time and superior in right to the claim of defendant and his co-owners. The only point, then, with which we are concerned, and as to which there is any difficulty, is whether plaintiffs had a right to elect to take the water through the box at the point mentioned. There can be no question, under the pleadings and admissions of defendant, as to plaintiffs being entitled to the quantity, when needed, capable of flowing through the box provided at his point of diversion. The conceded one-eighth interest could not, without pressure, flow through a box one foot square. But if plaintiffs elect to take less than the quantity to which they may be entitled, it is obvious that defendant is not in position to complain. Furthermore this quantity appears to be adequate for plaintiffs' purposes.

2. It will be remembered that plaintiffs were not parties to the former suit, and are in no wise bound thereby, and their interests, so far as here involved, must be considered as if such suit had never been instituted. It is

argued that the suit in hand was properly dismissed, not only for the alleged reason that there was no interference or pretended interference with plaintiffs' rights, but on account of the injury complained of being the result of wrongful acts by Kelsey. It is true that Kelsey was enjoined by the former decree from either removing boards from, or obstructing the flow through Dalton's half of the head gate, unless otherwise ordered by the court, provision for which was reserved in the decree. If, then, Kelsey violated this decree and closed the head gate, that is a matter with which Dalton and Kelsey only were concerned, and not these plaintiffs.

3. Defendant and his co-owners, it is conceded, were entitled to use the ditch only for the purpose of conveying surplus waters, from which it follows that if there were no surplus therein, they had no right to remove the board which occasioned the injury to plaintiffs. It was certainly not incumbent upon plaintiffs, whose rights were first and superior to defendant, to see that sufficient water was flowing in the canal to supply defendant's needs, for, their rights being first, it necessarily devolved upon defendant to see that the desired surplus was in the canal, and it became his duty, subject to the qualifications to follow, to provide therefor, before lowering his head gate to let such surplus pass through his premises.

4. Under the agreement with plaintiffs' predecessors in interest, plaintiffs were, and are tenants in common in the company ditch and dam at its source with Dalton and others, succeeding to the original interests, making each responsible in proportion to his interest therein, for the maintenance and repair of the dam and ditch, and in case of default of one or more the other has a right to make such repairs, for which the defaulting party becomes liable for his *pro rata;* but such failure by plaintiffs, if any, did not justify defendant, under the law, in making up the loss thus occasioned, by draw-

ing off the water from plaintiffs' division box.  See *Moss*
v. *Rose*, 27 Or. 595 (41 Pac. 666: 50 Am. St. Rep. 743).

5. When, therefore, he removed the board, causing the
depletion complained of, without making provision for
an additional supply of water in the ditch to make up
the deficiency, he necessarily invaded plaintiffs' rights
to their injury, of which they were entitled to complain.
This was as much as an encroachment upon plaintiffs'
rights as if he had tapped plaintiffs' ditch below the
point of diversion.  Had the company ditch been par-
titioned, so that plaintiffs' so-called "one foot" in width
of water would have flowed separately and apart from
the waters in the adjacent canal, it would certainly not
be urged that Dalton would have the right, in the event
of a shortage, to open this partition; this, however, was
not the method pursued.  The waters claimed by each
were allowed to mingle, and were divided at the point
above indicated.  The division box, therefore, constituted
the partition, and it was incumbent upon defendant, in
the use of his surplus, so to adjust it as not to interfere
with plaintiffs' use, so long as plaintiffs' use and manner
of diversion were reasonable.

6. The method pursued by plaintiffs appears to have
been for the purpose of determining when they were
receiving their quota of water, for the court had ruled
(although not as against them, but as against defendant
and his co-owners) that Kelsey was entitled to the quan-
tity that would flow through the four-foot aperture.
When, therefore, it is disclosed that the quantity was
of the same depth across the eight-foot box, and within
the manner designated by the commissioner appointed
by the court, it becomes clear that the one-half awarded
Kelsey, and the one foot, or one-eighth, owned by plain-
tiffs, would not have flowed through this opening, with-
out an additional obstruction being placed in defendant's
aperture at the head gate.  It is accordingly immaterial,

so far as defendant is concerned, whether such obstruction was placed there for the purpose of increasing the flow on Kelsey's side of the box, or for the purpose of running the additional quantity through the Carnes box, eight or ten feet above it. In fact the latter method would seem to be the more convenient manner of distributing the water, for when the supply was adequate for the demands of all, it would be left of uniform depth across · the entire width of the head gate, and require only such additional flow through the ditch above as would furnish the increased quantity necessary to fill the Carnes box.

The question then arises whether Kelsey was a necessary party. There is no dispute between Kelsey and plaintiffs as to the quantity to which plaintiffs are entitled. It is conceded by all, including Kelsey, that plaintiffs were entitled to one-eighth of the entire flow, and Kelsey, insisting only that it be diverted to plaintiffs in the manner adopted, in no way attempted to interfere with plaintiffs' use, but, on the other hand, endeavored to aid him in acquiring the supply required. He might properly have been made a party, but it cannot, under the record, be held that he is a necessary party, for, as indicated, a determination of the rights between plaintiff and Kelsey is not essential to the solution of the difficulty between Dalton and the Carnes. Section 41, B. & C. Comp. The only interference that plaintiffs were subjected to was by Dalton, hence it was not required that he make any one else a party defendant by reason of the trespass complained of.

7. It is well settled that one tenant in common in a ditch or water right may institute a suit for unlawful interference therein by another tenant (*Moss* v. *Rose,* 27 Or. 595: 41 Pac. 666: 50 Am. St. Rep. 743), and, as stated by the court in *Gould* v. *Stafford,* 77 Cal. at page 67 (18 Pac. at page 879): "Evidence that persons other than defendant also diverted water from the stream

was admissible only on the issue as to the amount of damages. If defendant's diversion of water was wrongful, he could have no defense as against the injunction in the fact that others were guilty of a similar wrong, and evidence offered to prove the latter fact would be irrelevant and inadmissible. And as plaintiff waived all claim to damages (except nominal), we think that it was error to admit evidence of diversions of water by third parties." The same case was later before that Supreme Court on appeal. *Gould* v. *Stafford*, 91 Cal. 146 (27 Pac. 543: *Gould* v. *Stafford*, 101 Cal. 32 (35 Pac. 429). At the retrials the pleadings were amended and the cause heard under new issues, and while the results differ, the court adheres to the rule first announced on this point. To the same effect, Wiel, Water Rights (2 ed.) § 196; *Lakeside Ditch Co.* v. *Crane*, 80 Cal. 181, 186 (22 Pac. 76). See, also, note to *Barnard* v. *Shirley*, 41 L. R. A. 758, where authorities considering this principle are collated.

8. It is also argued that since defendant concedes plaintiffs' prior right, and manifests no intention of continuing the interruption, the suit cannot be maintained. But it is clearly established that he did insist upon the right to deplete the flow in the manner complained of, and in his answer prays that his rights therein be adjudicated, under which circumstances it is fully settled that a suit is maintainable. Section 394, B. & C. Comp.; *Jones* v. *Conn*, 39 Or. 30, 47 (64 Pac. 855: 65 Pac. 1068: 87 Am. St. Rep. 634: 54 L. R. A. 630) ; *Hough* v. *Porter*, 51 Or. 318, 372 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728) ; *Whited* v. *Cavin*, 55 Or. 98 (105 Pac. 396, 401). The same point was urged in the briefs, and at the oral argument, but not deemed important in *Seaward* v. *Pacific Live Stock Co.*, 49 Or. 157 (88 Pac. 963), and *Williams* v. *Altnow*, 51 Or. 275 (95 Pac. 200: 97 Pac. 539).

It follows that the decree dismissing the suit must be reversed, and one entered enjoining defendant from

interfering with the flow of one-eighth the carrying
capacity of the company ditch to and through the aper-
ture provided by plaintiffs for that purpose.  And it
appearing important that the rights of the parties hereto
should be adjudicated, in the benefits of which each must
share, and that defendant was probably acting within
what he believed to be his rights, the  costs allowed
defendant in the circuit court will not be disturbed;
plaintiffs to have their costs on appeal.     REVERSED.

MR. JUSTICE EAKIN, having at circuit court tried the
former suit involving this ditch, took no part in this
decision.

Decided July 12, 1910.

ON PETITION FOR REHEARING.

[110 Pac. 174.]

MR. JUSTICE KING delivered the opinion of the court.

9. In the petition for rehearing our attention is called
to McPhee v. Kelsey, 44 Or. 194 (74 Pac. 401: 75 Pac.
713), where the ditch here involved was in controversy,
the petition averring it was there held that L. S. Kelsey
and the successor of the elder Wilson "were the owners,
or had the superior right to the amount of water which
would fill the present ditch to one-half its capacity; that
this respondent and his associates were entitled to the
use of the other half when there was sufficient water to
fill the ditch, and the decree of the circuit court which
is in evidence in this cause is to the same effect;" and
that it has been decreed and conceded in all former liti-
gation that Kelsey and Wilson (plaintiffs' predecessors
in interest) were entitled jointly to one-half of the ditch;
and that it has never been held that Kelsey alone was
entitled to one-half interest.  For these alleged reasons
it is argued we are in error in holding, in effect, that
plaintiffs' one-eighth interest, when taken together with
Kelsey's decreed rights, results in a right in defendant

and others interested with him to but three-eighths of the quantity capable of flowing through the company ditch. If in this counsel were correct, there could be no question as to the soundness of their position, but, as stated in our former opinion, the final decree in *McPhee* v. *Kelsey,* reported in 44 Or. 194 (74 Pac. 401: 75 Pac. 713), was vacated and a new hearing ordered (45 Or. 290: 78 Pac. 224), after which further testimony was taken, and in the decree entered thereunder the following language appears: "That L. S. Kelsey is entitled to the prior and exclusive right to the full amount of the water in said ditch to the extent of said four-foot ditch in width; that plaintiffs James Dalton and P. L. Smith (being the successors in interest jointly with George Neil of the rights of said McPhee, Smith, Tanner, and York in the said enlargement of said ditch) are entitled to the amount of water carried by such enlargement, subject to Kelsey's rights above defined." It is also conceded that four feet in width, as here used, means a one-half interest, and in all the former litigation respecting this ditch it is so treated.

When viewed in connection with the contention and proof in the above case we fail to see any ambiguity in the language quoted from the decree. It decrees as clearly as is possible to do so that, as between Kelsey, on the one hand, and Dalton and Smith, on the other, Kelsey alone is the prior owner, and entitled as a first right to a quantity of water equal to one-half of the carrying capacity of the company ditch, and the part of the decree following the above excerpt enjoins Dalton and his then co-owner, Smith, from any interference therewith. This decree was offered in evidence by the plaintiff, and for obvious reasons must be considered in determining the rights of the parties hereto, but plaintiffs cannot in any way be held bound thereby, for neither they nor any of their predecessors in interest were par-

ties to that suit. This rule, although elementary, appears to have been overlooked by the petitioners.

The pleadings in this case concede, and the proofs fully establish, that the plaintiffs, Samuel and W. A. Carnes, have the first right to a quantity of water equal to one-eighth of the carrying capacity of the ditch involved; from which it necessarily follows, when taken in connection with the adjudication in the McPhee-Kelsey suit, that defendant Dalton cannot interfere with plaintiffs' first right to the use of a quantity of water diverted through the plaintiffs' division box, not exceeding a quantity equal to one-eighth of the supply capable of being diverted through the company ditch. As the former decree gives to Kelsey as against Dalton and his associates in the former suit four-eighths of the carrying capacity of the ditch, it must follow that when Kelsey and these plaintiffs are each using their respective water rights to the full extent allowed, there must be less than four-eighths left for the other owners. This would leave the condition such that when plaintiffs are using no water, then as between Dalton *et al.*, on the one hand, and Kelsey on the other, each could, when the water is needed, use one-half thereof. That is to say the former decree, as between Kelsey and Dalton, is still effective. Kelsey, being first entitled to a "four-foot" supply, after which, when not needed by the Carnes', Dalton *et al.* may receive, when available, a like quantity, but when required by the Carnes', Dalton's supply must be reduced in proportion to the carrying capacity of the Carnes' foot-square division box, whether one-eighth or less.

In connection with the foregoing, reference is made to our statement in the narrative of facts, to the effect that Kelsey and Wilson were recognized as having one-half interest, and the defendant and his co-owners one-half. This statement, however, had reference only to the original understanding between the parties, and not

Sig. 20

to the decree as finally entered. It is too obvious to admit of discussion that not what we may now discover as the original understanding between the litigants, but the decree, as finally entered in the former suit, is binding upon this court.

In the petition much discussion is entered into as to the alleged injustice in holding to the effect that defendant cannot divert water from the river into the company ditch or in any way interfere with or use the division head gate; that the division gate must forever remain closed for the benefit of Kelsey and these plaintiffs, and defendant must accordingly lose his entire water rights, etc., etc. But there is nothing in the opinion from which such conclusions may be deduced. We merely held in substance, and so stated, that defendant should be enjoined from interfering with plaintiffs' prior right to the use of the quantity of water capable of being run through the Carnes box one foot square, placed at their point of diversion a few feet above the Dalton-Kelsey division box; such quantity not to exceed one-eighth of the carrying capacity of the company ditch. If then there is at any time only sufficient in the ditch to supply the quantity awarded plaintiffs, then as between the plaintiffs and defendant the plaintiffs are entitled to close defendant's side of the division-box in such manner as may prove essential to the diversion of such quantity through the Carnes division box. Again, when there is only sufficient to furnish Kelsey his four-eighths and the Carnes the quantity awarded them, the Dalton side of the division box may, for that purpose, be closed entirely. But when all water capable of flowing through the company ditch, in excess of that required by either or both of the parties last named, is in the company ditch, the excess must be permitted to flow to defendant's premises, and the boards in the head gate may be removed or arranged in such manner, whether by defendant, his

employees, or others authorized so to do, as to permit such surplus to flow through the head gate.

We do not wish to be understood as adjudicating in this suit any controversy between Kelsey and this defendant, for example, as to what lands and where Kelsey may irrigate, etc. We intend only to recognize their relative rights as expressed in the decree in evidence between them, and the rights thereunder are here considered merely in connection with, and only in so far as may be essential to a full understanding and determination of the controversy in hand. Nor can we at this time determine the relative rights of the plaintiffs between themselves, or as between plaintiffs and Dalton's co-owners, or as against Kelsey, the reasons for which are obvious. Indeed it is unfortunate that all were not made parties either to the former suit, or to the one before us, where issues could, and should, have been framed with the view to a determination (during the lifetime of the witnesses) of the relative rights of all concerned, but in the absence of such presentation we are powerless to afford a complete remedy for the many complexities possible to arise between all those interested.

It is argued that it is unnecessary, in order to furnish plaintiffs the water awarded them, to obstruct the flow through defendant's division box. When the company ditch is used to its full carrying capacity this position is tenable, but to concede this contention, when the supply is inadequate for all, would be to question the law of gravitation, for the findings in the former suit recite that "the bottom of the Dalton box is 4 feet 4 inches wide, and has a rapid fall for a distance of 10 feet above the box and the same through the box"; hence when there is only sufficient in the ditch to supply plaintiffs, or to supply plaintiffs and Kelsey, as the case may be, and defendant's head gate is left open, it must necessarily follow that a part of the water would flow through Dal-

ton's head gate, depleting plaintiff's supply proportionately. The contention on this point overlooks the adjudicated as well as conceded fact that plaintiffs and Kelsey are prior appropriators, and their actual needs, to the extent of four-eighths formerly decreed Kelsey, and that here awarded plaintiffs, must first be supplied before any water may flow to defendant, and whatever may then be left to defendant, whether much or little, becomes immaterial. It may prove more practicable to run the quantity going to Kelsey and these plaintiffs, as tenants in common, through Kelsey's side of the box, but if so it will necessitate a rearrangement of the company division head gate. This, if found necessary, may be directed by the trial court as before, through the aid of commissioners, appointed for the purpose.

We appreciate the suggested difficulty possible to arise in carrying out and making effective the decree when entered, if all the parties involved and interested do not comply with the former decree, as well as the one here entered, but with that we have nothing to do. It is our function to interpret and not to administer the law. In this connection, however, it may not be improper to note that, as supplementary to the usual method of dealing with those who may refuse to comply with a decree in this class of cases, an adequate administrative system appears to have been provided in the act of 1909. See Laws 1909, p. 319.

The petition for rehearing is denied.

REVERSED: REHEARING DENIED.