(March 4, 1913.)

SAMUEL K. KEYSER, Appellant, v. JAMES M. MORE-HEAD et al., Respondents.

[130 Pac. 992.]

COTENANTS—REPAIR OF COMMON PROPERTY—EXPENDITURES—CONTRIBUTION.

1. Where several parties construct a lateral ditch for the purpose of taking water from a main ditch to the lands of such parties for a beneficial use, and it is understood that said lateral shall become the property of such persons in proportion to the quantity of water owned by each land owner, and water is conveyed through said lateral ditch to such lands, such persons so constructing said ditch are co-owners and tenants in common, and are entitled to the use of the same for the carriage of water to irrigate their lands.

2. A tenant in common is entitled to contribution for expenditures absolutely necessary for the benefit and preservation of the common property and to charge the cotenants with their proportion of the reasonable expenses incurred fairly and in good faith for the benefit of the common property.

3. Where a lateral ditch has been constructed by several persons as co-owners, and it becomes necessary to repair said ditch, and all the co-owners agree upon the improvement, and such improvement is made by all the co-owners except one, who does not contribute to the same, and such improvement is used as a part of the ditch, and permission is given to the cotenant, who refused to contribute to use said ditch for one year, and thereafter he demands his water through said pipe-line and through the said ditch, and offers to pay

his share, the co-owners who constructed the same cannot deprive him of his interest in said canal and the portion improved by the pipe, upon his paying his share of such expenses.

APPEAL from the District Court of the Seventh Judicial District for Washington County.   Hon. Ed. L. Bryan, Judge.

Action to establish a right and title to improvements in a lateral ditch.   Judgment for defendants.   *Reversed.*

L. L. Feltham and Frank D. Ryan, for Appellant.

The general rule in regard to the right of possession by co-owners of an undivided interest in real estate is that no one of them has the right to keep the others out of any part of the estate.   (Jones on Landlord and Tenant, sec. 28, p. 24.)

Cotenant owners of an estate in lands stand in a relation to each other of mutual trust and confidence, and neither will be permitted to act in hostility to the other in reference to the joint estate, and a distinct title acquired by one will ordinarily inure to the benefit of all.   (*Arthur v. Coyne,* 32 Okl. 527, 122 Pac. 688.)

Where several persons are tenants in common in an irrigation ditch and dam at its source, each is responsible in proportion to his interest for the maintenance and repair of the dam and ditch, and in case of default of one or more, the other may make the repairs for which the defaulting party is liable for his *pro rata,* but such a failure by one does not justify another in making up the loss occasioned by drawing off the water from the former.   (*Carnes v. Dalton,* 56 Or. 596, 110 Pac. 170.)

Where there was no proof that repairs made by the tenant in possession were necessary, or that improvements made added to the rental or permanent value of the premises, no allowance could be made therefor.   (*Armijo v. Neher,* 11 N. M. 645, 72 Pac. 12.)

Being associated in interest as tenants in common, an implied obligation exists to sustain the common interest.   This

reciprocal obligation will be enforced in equity as a trust. (Freeman on Cotenancy and Partition, 2d ed., sec. 151.)

Harris & Smith, for Respondents, cite no authorities.

STEWART, J.—This action was brought by the appellant against the defendants for the purpose of establishing his right and interest in a certain pipe-line to the extent of twenty miner's inches, upon plaintiff's paying into court his proportional share of the expense of purchasing and laying said pipe-line. The defendants by their answer put in issue the allegations of the complaint.

It appears from the record that the appellant and the respondents own lands in the same neighborhood, and that such parties have been taking water from what is known as the Lower Payette Ditch and its extensions, and that such water has been carried from the main ditch to the lands of the parties to this action through one lateral ditch; that the land over which this lateral passes is of such a character as has made it necessary to build a flume or pipe for a distance of about one thousand feet. When the lateral ditch was first constructed a flume was built across this portion of the line of the lateral, which was used by all the parties for the purpose of carrying water to their said lands from the main ditch, and it served such purpose up to and including the year 1910.

The lands of the parties to this action were below and beyond the flume, and below the point where the pipe-line delivered the water to the lateral below the depression, where the same water was delivered from the lateral into the pipe-line. There is no dispute between the parties as to the respective rights of the different parties to convey water through the lateral from the main ditch to the lands each owned and described in the pleadings in this case.

In the latter part of 1910 the flume, from long use, became unserviceable, and would not carry the water through it so as to supply the necessary water upon the lands of both plaintiff and the defendants, and the defendants proposed among themselves, and submitted such proposition to the plaintiff,

that the flume should be removed and that a pipe-line be constructed by all parties across the depression the full span of the old flume. The evidence is conflicting as to whether the plaintiff consented with the defendants and agreed to this arrangement. Nevertheless, the defendants determined in December, 1910, that the old flume over the depression was not sufficient to carry the water, and removed the old wooden flume and constructed the pipe-line across the depression. After the pipe-line was constructed and was finished, in May, 1911, and water was being carried through the same, the appellant requested the right to carry through the pipe the amount of water he had previously been using upon his land the same as it had been carried through the old flume, and upon such request he was permitted to carry the water through the pipe-line during the year 1911. Thereafter, in April, 1912, the appellant asked permission to purchase an interest in the pipe-line and this was refused. In this connection it is proper to observe that the company owning the lateral ditch, of which the flume was a part, was not the owner of the land occupied by the old flume, the land where the pipe-line is laid, and has never acquired by conveyance a right of way therefor, but has used the flume over the depression for a number of years.

The lateral ditch above referred to and the flume were constructed by four different persons, Monteith, Waite, Pence and Rhea, and these four persons furnished the money and material and secured the right of way for the lateral ditch and the construction of the flume where the pipe-line was afterward constructed, and the plaintiff and defendants are the successors in interest of the parties who built the lateral ditch; the lateral ditch was constructed for the purpose of taking water from the main ditch to water the lands owned by the parties who constructed the same, and the title to such lands and the lateral ditch passed from such persons to the plaintiff and the defendants.

We think it is also clear from the evidence, when considered all together, that the parties to this suit acquired the lateral ditch as co-owners and used the same as tenants in common,

and that each is entitled to the use of the same for the carriage of water to irrigate their respective lands. The pipeline constructed by the defendants was a necessary repair and improvement of the lateral ditch, and was used for the purpose above named. It was constructed to carry the water of the lateral ditch underground and poured it back into the lateral ditch at a point lower down and at a point where the flume delivered the water prior to the construction of the pipe. The pipe was laid along the right of way formerly occupied by the flume, and thus occupied the same right of way that was occupied by the flume, and by such construction the pipe-line became a part of the lateral ditch and was necessary for the operation of the same.

It also appears that if the plaintiff is not allowed to purchase an interest in such pipe-line, he will be compelled to build a separate pipe-line for his own use across the depression in order to carry water to his land, and that this will necessitate his purchasing or securing a right of way to do so, and that large and unnecessary expense will be imposed upon him.

It is shown that when the pipe-line was constructed it was upon the theory and for the purpose that the same was of sufficient capacity to carry water to supply the demands of the defendants and also the plaintiff in irrigating their lands.

The cause was tried to the court and findings were made and judgment was rendered in favor of the defendants, and the judgment denied the plaintiff any right, title, claim or interest in the pipe-line or that he was entitled to purchase any interest therein, and that he was not entitled to an injunction.

The appellant presents two questions to this court: First, whether there was an agreement in good faith between the plaintiff and defendants for mutual co-operation in the construction of the pipe-line section connecting the two parts of the old lateral ditch, and whether it was carried out in good faith by the plaintiff or violated by the defendants; second, whether under all the facts of this case the appellant has the same interest in said pipe-line as he had in the flume, which

it replaced, prior to the construction of the pipe-line, upon his paying his proportionate share of the construction of said pipe-line.

In 38 Cyc., p. 53, paragraph E, the author summarizes the general rule as recognized by the authorities with reference to duty and right to repair property belonging to tenants in common, and it is said: "Tenants in common are not as such agents for each other, nor are they bound to protect each other's interests and to prevent them from deteriorating in value; the duty to repair is equal; and where a cotenant improves the common property at his own expense, thereby putting it to its only beneficial use, he is not liable to his cotenants for trespass. If there be authority, by agreement or otherwise, to improve the property at the expense of the cotenants therein, then the cotenant so improving will be entitled to contribution from his cotenants if he act prudently and in good faith; and under such circumstances the cotenant so improving will not be held responsible to others for mere errors of judgment either as to the character of the improvement or the construction thereof."

The same author, on p. 54 of the same volume, also says: "A tenant in common is held to be entitled to contribution for expenditures absolutely necessary for the benefit and preservation of the common property, and the right is even extended to charge the cotenant with a just proportion of the reasonable expenses incurred fairly and in good faith for the benefit of the common property or such as were from necessity dispensed for the common estate, even though the conduct of the paying tenant may not have been strictly equitable."

The authorities collated and cited by the author are numerous, and an examination of the same seems to support the rule announced by the author. As an illustration: The supreme court of Illinois in the case of *Mix v. White*, 36 Ill. 484 and *Haven v. Mehlgarten*, 19 Ill. 91, held that cotenants of a ferry privilege, which required the owners to construct and maintain the ferry in proper repair for public use, having knowledge of repairs made thereon and no demand having been

made upon them for payment therefor, are liable to contribute toward such repair made by their cotenants.

This rule of law is also approved in the case of *Carns v. Dalton,* 56 Or. 596, 110 Pac. 170, and the case of *Arthur v. Coyne,* 32 Okl. 527, 122 Pac. 688.

In the case of *Armijo v. Neher,* 11 N. M. 645, 72 Pac. 12, the supreme court of New Mexico, in dealing specifically with the question of repair by one cotenant, says: "As to the repairs, it is not shown that they were necessary, further than is to be inferred from the fact that they were made." The court approves in that opinion the admission of counsel that if the expenses were necessary the co-owners would be properly chargeable with their share of the costs, and this rule seems to be approved by the supreme court of Oregon in the case of *Carnes v. Dalton,* 56 Or. 596, 110 Pac. 170 and the supreme court of Oklahoma in the case of *Arthur v. Coyne,* 32 Okl. 527, 122 Pac. 688.

We believe that these authorities apply to the facts in this case. The evidence shows the circumstances which necessitated the placing of the pipe under the ground where the depression was, as a substitute for the flume which went over the depression and which had become worthless, and was in such a decayed condition that it would not carry the water across the depression on the line of the lateral ditch, and that the parties interested in the lateral ditch talked the matter over of putting in the pipe, and that the plaintiff and the defendants agreed that it was necessary, but that the plaintiff declined, when the proper time came for putting it in, to participate or contribute at that time to the costs of the construction, and that after the pipe was put in the parties all agreed that the plaintiff should take water through the pipe during the year 1911, and that afterward he asked permission to purchase an interest in the pipe-line.

Upon these facts it is clear that these co-owners in the lateral ditch determined that it was necessary to make this improvement and that the improvement was made by the parties who had an interest in the property and the repair of the ditch, so that it would properly carry the water. By making

this improvement the pipe became a part of the ditch and the plaintiff being an owner in the ditch and in the flume removed, likewise became an owner in the pipe made a part of the ditch and became liable to the defendants, who paid for the improvement, for his proportionate share. Under the facts of this case the plaintiff is entitled to relief in this action and to have a decree in this case establishing his right upon his contributing his proportionate share of the costs of such improvement.

The judgment in this case is *reversed* and a new trial ordered, and the trial court is directed to hear proof of all the parties and find the cost of the improvement made and the amount that plaintiff owes defendants, and to require such sum to be paid to the defendants or to the clerk of the district court, and upon such payment a decree should be entered in favor of the plaintiff declaring his title in said pipe as a part of the lateral ditch and the right to convey water through the pipe laid by the defendants as a part of the lateral ditch.

The costs in the district court and also the costs on this appeal are to be paid in the same proportion as the water taken through the lateral ditch by the respective parties to this suit.

Ailshie, C. J., and Sullivan, J., concur.