181 P.3d 443

**Raleen BAHNMILLER, Plaintiff–Appellant,**

v.

**Jerry BAHNMILLER and Fred Bahnmiller, Defendants–Respondents.**

**No. 32616.**

Supreme Court of Idaho, Boise, February 2008 Term.

March 27, 2008.

518

Pike & Shurtliff, Boise, for appellant. M. Karl Shurtliff argued.

Bauer & French, Boise, for respondents. Randal J. French argued.

EISMANN, Chief Justice.

## I. FACTS AND PROCEDURAL HISTORY

Prior to the untimely death of Jerry Bahnmiller (Jerry), he was married to Raleen Bahnmiller (Raleen). During their marriage, they purchased a parcel of real property in Boise County with Jerry's father, Fred Bahnmiller (Fred). The sale closed July 20, 1998. The purchase price was $45,000, with a $5,000 down payment and the balance paid by a promissory note requiring monthly and annual payments, with payment in full by September 21, 2003. All three parties signed the note, and it was secured by a deed of trust. Fred purchased a mobile home that was placed on the property, and he paid for labor and materials to erect a building on the property. The building consisted of a shop on the ground floor and an apartment above it. Fred lived in the apartment, and Jerry operated an automotive body shop in the shop.

Raleen subsequently filed an action for divorce against Jerry. The primary issue in the action was the community property interest, if any, in the real property.[1] All three parties in this action testified during the divorce trial held on January 2, 2002. On March 5, 2002, the trial court in the divorce action issued a memorandum opinion finding that Fred, Jerry, and Raleen held the real property as tenants in common. The court did not determine their interests in the real property because Fred was not a party to the divorce action. Jerry died before judgment was entered, and the divorce action was ultimately dismissed.

On December 6, 2002, Fred filed an action against Jerry and Raleen seeking to quiet his title in the real property. The trial court in that action determined that Fred, Raleen, and Jerry held the real property as tenants in common. It declined to determine their proportionate interests, stating that they must file an action for partition.

On February 24, 2004, Raleen filed this action against Jerry and Fred seeking to partition the real property. In July 2004, Jerry died in a motorcycle accident. The case was tried to the court on March 15, 2005, and on May 27, 2005, it issued its findings of fact and conclusions of law. The court re-affirmed that Fred, Raleen, and Jerry[2] held the real property as tenants in common. It ruled that the property could not be partitioned in kind and ordered it sold.

At the time of the trial, Fred was eighty-five years of age, was in an assisted living facility, was unable to travel, and had declined mentally. Therefore, he did not testify in person at the trial, nor did he testify by deposition. The district court admitted into evidence his testimony from the divorce tri-

---

1. The cotenancy interests of Jerry and Raleen in the real property are presumed to be community property. *Worzala v. Worzala,* 134 Idaho 615, 618, 7 P.3d 1092, 1095 (2000).

2. No probate had been commenced regarding Jerry's estate, and the record does not reflect who would inherit his interest in the real property. The district court addressed the issues in the case as if Jerry were still alive, and for convenience so do we.

al,[3] along with an exhibit showing payments he had made regarding the real property, including payments on the promissory note, payments for materials and labor used in making the improvements, and payments for real estate taxes.

Based upon the evidence presented, the district court found that Fred had paid $86,816.47 in connection with the real property and that Raleen had paid $1,600.00. The court held that they were each entitled to recover their respective payments, plus interest, from the proceeds of the sale of the real property. The sale of the property netted $139,040.37. The court awarded $2,888.24 of that sum to Raleen ($1,600.00 plus $1,288.24 in interest) and the balance to Fred as his contributions plus interest. Raleen timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in admitting into evidence an exhibit that had been admitted during the trial in Raleen and Jerry's divorce action?

2. Did the district court err in holding that Fred Bahnmiller was entitled to contribution from his cotenants for sums he spent to improve the real property and to make payments on the debt it secured?

3. Did the district court err in awarding Fred Bahnmiller interest on sums he spent to improve the real property and to make payments on the debt it secured?

## III. ANALYSIS

### A. Did the District Court Err in Admitting into Evidence an Exhibit that Had Been Admitted during the Trial in Raleen and Jerry's Divorce Action?

▮ Fred testified during the trial of the divorce action regarding the payments he had made in connection with the real property. Rather than testify as to each payment, he offered a summary listing each payment by check number, date, payee, purpose, drawee bank, and amount. He testified that the summary accurately reflected the pay-

ments he had made on the land and the improvements. The district court found that Fred was unavailable as a witness at the trial in this action and admitted his prior testimony pursuant to Idaho Rule of Evidence 804(b)(1). The court also admitted the summary to which Fred referred in his testimony. Raleen contends that it was error to admit that summary in this case.

Raleen first argues that Rule 804 only permits the admission of testimony given by a witness in a prior proceeding; it does not permit the admission of exhibits admitted in that proceeding. Raleen is correct that Rule 804 provides for the admission of "[t]estimony given as a witness" in another proceeding, not exhibits admitted in that proceeding. However, testimony admitted under Rule 804 can provide the foundation for the admission of an exhibit. The exhibit at issue was a summary of checks. Fred testified that they represented payments he had made on the land and improvements. The admissibility of a summary prepared in anticipation of litigation is governed by Rule 1006 of the Idaho Rules of Evidence. *City of Idaho Falls v. Beco Constr. Co., Inc.*, 123 Idaho 516, 524, 850 P.2d 165, 173 (1993). Raleen does not contend that the procedural requirements of that Rule were not met or that Fred's testimony did not provide adequate foundation for the admission of the summary.

Raleen also argues that the summary was inadmissible because it was not prepared by Fred. The summary was prepared by someone in the office of Jerry's attorney based upon information provided by Jerry and Fred. Rule 1006 does not require that the witness whose testimony provides the foundation for the admission of a summary must be the person who prepared the summary.

In the issues on appeal listed in her brief, Raleen does not challenge the admission of Fred's testimony from the divorce action. She only challenges the admission of the summary. She states that if the summary had not been admitted, Fred's testimony would have been of no effect.

---

3. Neither party contended that Idaho Code § 9-202(3) made the testimony inadmissible against the interest of Jerry's estate in the real property,

and we express no opinion on that issue. *See, Thurston v. Holden,* 45 Idaho 724, 265 P. 697 (1928).

In her argument regarding the admissibility of the summary, however, she states that the admission of Fred's testimony was "inappropriate." She also states that she objected to the admission of the testimony on the ground that "the parties were different, the issues were different and Plaintiff did not have the same motive to develop the testimony of Fred Bahnmiller by cross examination in that case where the issues of his alleged payments as *gifts* to his son was peripheral to divorce case issues." (Emphasis in original.) Because Fred's prior testimony provided the foundation for admitting the summary and because Raleen's brief could be read as arguing that it was error to admit the testimony, we will address that issue.

Rule 804 provides that when a declarant is unavailable as a witness, the declarant's "[t]estimony given as a witness at another hearing of ... a different proceeding ... [is excluded from the hearsay rule] if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Raleen does not challenge the fact that Fred was unavailable as a witness at the trial in this action. She also does not challenge the fact that she had an opportunity to cross examine Fred when he testified in the divorce action. She in fact did cross examine him about entries in the summary. She only disputes the trial court's finding that she had a similar motive in the divorce action to develop Fred's testimony by cross examination.

Preliminary questions concerning the admissibility of evidence are determined by the trial court. *Carnell v. Barker Management, Inc.*, 137 Idaho 322, 327, 48 P.3d 651, 656 (2002); I.R.E. 104(a). The trial court's factual findings regarding the foundation necessary for evidence to be admitted will be sustained if they are based upon substantial although conflicting evidence. *State v. Crea*, 119 Idaho 352, 353, 806 P.2d 445, 446 (1991).

The memorandum decision issued by the judge in the divorce was admitted as an exhibit in this case. In that memorandum decision, the judge wrote, "The primary issue in dispute is what community property inter-est, if any, there is in land and building which according to the Deed is jointly owned by Raleen Bahnmiller and Jerry Bahnmiller, husband and wife, and Fred Bahnmiller, an unmarried person." The judge later added, "Both parties are requesting that this court determine the value of the land and the shop and decide the monetary interest Raleen Bahnmiller has in the land and shop." Obviously, the amount each person contributed would be central to that determination. The district court's finding that Raleen had a similar motive in the divorce action to develop Fred's testimony regarding the amount he contributed is supported by substantial evidence. The district court therefore did not err in admitting Fred's testimony given in the trial of the divorce action.

**B. Did the District Court Err in Holding that Fred Bahnmiller Was Entitled to Contribution from His Cotenants for Sums He Spent to Improve the Real Property and to Make Payments on the Debt It Secured?**

The district court found that Fred had paid $86,816.47 in connection with the real property and that he was entitled to the return of that contribution from the sale proceeds. That sum included payments for labor and materials to construct the improvements, the down payment and the payments on the promissory note, and the payments of real estate taxes. Awarding Fred his entire contribution from the sale proceeds would provide him with more than one-third of the sale proceeds. It would, in effect, require contributions from Raleen's and Jerry's interests in the real property. Raleen contends that Fred should only be entitled to one-third of the sale proceeds and should not be entitled to any contributions from her or Jerry for payments he made.

With respect to the cost of the improvements, "[i]f there be authority by agreement or otherwise to improve the property at the expense of the cotenants therein, then the cotenant so improving will be entitled to contribution from his cotenants if he act prudently and in good faith." *Keyser v. Morehead*, 23 Idaho 501, 506, 130 P. 992, 994 (1913). Raleen argues on appeal that the

evidence did not show any agreement among the cotenants that Fred could improve the real property at their expense.

■ "A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court." *Thomas v. Madsen,* 142 Idaho 635, 637, 132 P.3d 392, 394 (2006). "It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *KMST, LLC v. County of Ada,* 138 Idaho 577, 581, 67 P.3d 56, 60 (2003).

During her trial testimony, Raleen admitted that it was the intention of the parties from the beginning to purchase a parcel of real property and build a shop on it so that Jerry would have a place to work. She also stated that she and Jerry both worked in the business, although Jerry testified that she only mixed paint a few times. She was fully aware of the construction project and arranged for her brother to do the concrete work. She testified that she was under the assumption that by performing labor in the construction project she and Jerry were "paying on the property and the taxes and everything that went along with the construction and the buying of the property."[4] Fred testified in the divorce action that based upon his conversations with Jerry it was his understanding that he would own the property but Jerry would make the payments.

Raleen was fully aware of the proposed improvements from the beginning, and she obviously agreed to and would benefit from them. The shop would provide a place for her husband, Jerry, to operate his body shop. She participated in the construction project by performing some labor and by arranging for her brother to do the concrete work. She contributed $1600 to the project and admitted an obligation to help pay for the property and improvements, although she claimed to think that such payments would be in the form of labor. Under the facts of this case, the district court did not err in inferring that the parties had agreed to share the cost of acquiring the property and constructing the improvements.

■ With respect to the payments on the promissory note and real estate taxes, Raleen contends that the district court should have found that such payments were gifts, for which Fred is not entitled to contribution. "A tenant in common is held to be entitled to contribution for expenditures absolutely necessary for the benefit and preservation of the common property." *Keyser v. Morehead,* 23 Idaho 501, 506, 130 P. 992, 994 (1913). The promissory note was secured by a deed of trust. It and the tax assessments were both liens on the real property. *Treasure Valley Bank v. Butcher,* 117 Idaho 974, 793 P.2d 206 (1990); I.C. §§ 45–1503(3) & 63–206(1). "A cotenant who pays a lien on the common property is not a mere volunteer, since the discharge of the lien protects his or her own title in the property, and is necessary." 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 66 (2005). The district court did not err in holding that Fred was entitled to contribution for the payments he made on the promissory note and the real estate taxes.

Raleen also contends that there is nothing in the record showing how the district court arrived at the figure of $86,816.47. She argues that no witness testified to that number, nor does it occur in any exhibit. According to her, the summary of the payments from the divorce case showed a total of $90,996.47 and there is nothing explaining the difference between that amount and the amount awarded by the district court.

The difference between those two figures is $4,180. During her cross-examination of Fred in the divorce trial, Raleen questioned him about checks listed in the summary that were for the payment of attorney fees. Fred testified that his son asked for money for an attorney; that he did not know what the legal fees were for, although there was some talk about a divorce; and that he did not recall incurring any attorney fees for the real

---

4. Raleen does not contend that there was evidence showing the value of that labor or that it should be treated as a contribution in the same manner as a monetary payment.

property or needing to talk to a lawyer. There were three checks for attorney fees listed in the summary, and they totaled $4,180. The district court obviously deducted that sum from the total payments of $90,996.47 listed in the summary to arrive at $86,816.47.

### C. Did the District Court Err in Awarding Fred Bahnmiller Interest on Sums He Spent to Improve the Real Property and to Make Payments on the Debt It Secured?

The district court ruled that the proceeds from the sale of the real property "will be disbursed first to satisfy the contributions, plus interest, of Fred and Raleen Bahnmiller, and then the balance shall be paid out equally to each named party or their authorized representative." Fred then submitted a document listing payments totaling $90,532.60 as his contributions and calculating interest on each of those payments from the first day of the month following the payment. The interest he calculated in this manner totaled $63,418.56 through March 15, 2005. Based upon those calculations, Fred claimed that his contributions plus interest totaled $153,951.16. He recommended that Raleen receive her $1,600.00 contribution plus interest through March 15, 2005, in the sum of $1,288.24, for a total of $2,888.24. Deducting that sum from the sale proceeds of $139,040.37 would leave $136,152.13, which Fred recommended he receive because it was less than the amount he claimed for his total contributions plus interest. The district court agreed and ordered that the proceeds be distributed in that manner.

Raleen argues that the court erred in awarding interest because there was no agreement between the parties for the payment of interest. "A cotenant entitled to a credit for mortgage payments or for taxes in protecting and maintaining the common property is ordinarily entitled to interest on such payments." 20 Am.Jur.2d *Cotenancy and Joint Ownership* § 59 (2005). Raleen signed the promissory note agreeing to make monthly and annual payments to purchase the property, and she signed the deed of trust agreeing that all taxes would be paid ten days before delinquency. The district court did not err in assessing interest on her and Jerry's share of the contributions.

Under the facts of this case, Fred was also entitled to interest on the contributions Raleen and Jerry owed for the improvements on the real property. The parties had agreed to share the cost of those improvements. Interest begins to accrue on money when it becomes due. *Swanson v. Swanson,* 134 Idaho 512, 519, 5 P.3d 973, 980 (2000); I.C. § 28–22–104(1). Fred is entitled to interest on the contributions owed him by Raleen and Jerry from the time they became due. If the parties did not agree upon when Raleen and Jerry would contribute to their share of the cost of the improvements, then they were required to do so within a reasonable time. *See, Barnes v. Huck,* 97 Idaho 173, 178–79, 540 P.2d 1352, 1357–58 (1975).

Raleen also contends that the district court erred in awarding Fred interest on his share of the contributions. In this regard, she is correct. Fred is entitled to contribution from Raleen and Jerry to the extent that he paid more than his one-third share. He is not entitled to interest on his one-third share, nor was Raleen. Therefore, we must vacate that portion of the judgment awarding interest and disbursing the sale proceeds. The case is remanded for the district court to recalculate the interest and then, based upon such recalculation, to determine the amount of the sale proceeds each party is entitled to receive.

### IV. CONCLUSION

We affirm the judgment of the district court except its awarding of interest and disbursement of funds. We remand this case for recalculation of the interest and the division of the sale proceeds.

Justices BURDICK, J. JONES, W. JONES and Justice Pro Tem KIDWELL concur.