# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 41583

| | |
|---|---|
| DARYL K. and LINDA L. MULLINIX, husband and wife,     ) <br> ) | Boise, February 2015 Term |
| Plaintiffs-Counterdefendants-Respondents,   ) | 2015 Opinion No. 37 |
| v.   ) | Filed: April 1, 2015 |
| KILLGORE'S SALMON RIVER FRUIT CO., an Idaho corporation,   ) | Stephen W. Kenyon, Clerk |
| Defendant-Counterclaimant-Appellant.   ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County. Hon. John R. Stegner, District Judge.

The district court's order that Mullinix pay an annual water delivery fee to Killgore is <u>vacated</u>. In all other respects, the district court's second amended final judgment is <u>affirmed</u>. This case is <u>remanded</u> for further proceedings consistent with this Opinion. Costs on appeal to Mullinix.

Sawtooth Law Offices, PLLC, Boise, attorneys for appellant. Bryce S. Farris argued.

Barker, Rosholt & Simpson, LLP, Boise and J. A. Wright, Grangeville, attorneys for respondents. Albert P. Barker argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This appeal involves Respondents Daryl and Linda Mullinix's (collectively "Mullinix") right to use Appellant Killgore's Salmon River Fruit Co.'s (Killgore) pipeline to convey water from Joe Creek. Both parties have water rights pursuant to partial decrees from the Snake River Basin Adjudication (SRBA) to obtain water from Joe Creek. The parties also entered into a private Settlement Agreement, which required that Mullinix's point of diversion was below Killgore's point of diversion on Joe Creek. After the parties entered into this Agreement, Mullinix filed a complaint against Killgore seeking to use Killgore's pipeline to convey water. Killgore counterclaimed. After a bench trial, the district court ordered that Mullinix could use Killgore's pipeline, but Mullinix had to install a weir below Killgore's weir to satisfy the point of

diversion clause in the Agreement. The water from Mullinix's weir would then join Killgore's pipeline to reach Mullinix's property. After the district court issued its order, Killgore prevented Mullinix from obtaining an easement on the property of a nonparty to install the weir. As a result, the district court ordered that Mullinix could forgo the separate point of diversion and instead install a tap on Killgore's pipeline as it crossed Mullinix's property. Killgore appeals to this Court. We affirm in part, vacate in part, and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Property At Issue

In the 1960s, James and Josephine Killgore acquired property in Idaho County along the Salmon River known as the Horseshoe Group of placer mining claims located in Sections 23 and 24 T. 27 N., R. 01 E. About twenty acres of this property was conveyed to Mullinix through the following conveyances together with all appurtenances: (1) warranty deed from James and Josephine to Louis and Maude Weise; (2) warranty deed from Maude Weise to James and Kathryn Green and Roy and Irma Green; (3) warranty deed from Roy and Irma Green to James and Kathryn Green; (4) quitclaim deed from James and Kathryn Green to Greenco II, Inc.; and (5) warranty deed from Greenco II, Inc. to Mullinix. This parcel eventually conveyed to Mullinix is hereinafter referred to as the Killgore-Mullinix parcel.

Killgore is an Idaho corporation with its principal place of business in Idaho County. James and Josephine incorporated Killgore in 1974. In 1974 and 1997, James and Josephine quitclaimed their interests in the Horseshoe Group placer mining claims to Killgore. In 2000, 2004, and 2009, Killgore filed subdivision plats with the county. Killgore's property has been subdivided into fifty-one lots in Killgore's Horseshoe Bend Estates. Other than approximately forty-five acres, Killgore has sold lots in the subdivisions to third parties or transferred ownership to related persons.

### B. History of Property's Water Rights

#### 1. Joe Creek Water Rights

Wilber Van Wey owned a parcel of land on the Salmon River in the Horseshoe Bend area. In 1929, the Idaho Department of Water Resources (IDWR, formerly the Department of Reclamation) issued Van Wey a license for 2 cubic feet per second (cfs) of water from Joe Creek, a tributary of the Salmon River, to irrigate twenty-nine acres of land.

An open ditch conveying water from Joe Creek to Killgore's property had existed since James and Josephine purchased the property in the 1960s. The water was conveyed by the open ditch from Joe Creek to a reservoir on Killgore's property. This ditch went across the property of a nonparty Ernest and Judith Robinson and the Killgore-Mullinix parcel. This water from Joe Creek was delivered to the Killgore-Mullinix parcel for one irrigation season in 1966.

In 1966, James filed for a water right from Joe Creek. In 1972, the Robinsons granted James an exclusive easement to construct a water diversion point at Joe Creek. In 1987, Killgore piped the open ditch and buried the pipeline from its point of diversion at Joe Creek on the Robinson property to Killgore's property. The Soil Conservation Service, now the National Resources Conservation Services, provided Killgore $21,000 to pipe the ditch. Killgore did not construct the pipeline with an outlet or delivery point for the Killgore-Mullinix parcel, although the pipeline goes through the Killgore-Mullinix parcel as did the ditch. In 1988, Killgore filed a notice of claim to water right No. 79-4001 with the SRBA court to divert 2.6 cfs of water from Joe Creek to 130 acres for the beneficial use of irrigation.

2.      Salmon River Water Rights

In 1966, James also applied for a water right to pump water from the Salmon River to irrigate 130 acres, including the Killgore-Mullinix parcel. In 1981, the IDWR issued James a water right license, No. 79-2094, to divert 1.5 cfs from the Salmon River for beneficial use to irrigate 130 acres.

In 1988, Killgore filed a notice of claim to water right No. 79-2094 with the SRBA court to divert 1.5 cfs of water from the Salmon River to 130 acres for the beneficial use of irrigation. In 2002, Killgore applied to transfer the point of diversion for water right No. 79-2094, which was approved by the IDWR.

3.      Killgore's Horseshoe Bend Estates Water Rights

In 2007, certain lot owners of Killgore's Horseshoe Bend Estates filed applications to transfer water rights to their lots from Killgore. Killgore objected, and the IDWR did not approve the transfer. Some of these owners have irrigation agreements with Killgore, but not all of the owners receive water from Killgore's pipeline.

**C.      SRBA Proceedings & Settlement Agreement**

On September 10, 2007, Mullinix filed a claim for water right No. 79-2063, claiming a 1928 priority date to use 0.6 cfs of water from Joe Creek to irrigate eighteen acres of Mullinix's

3

property. Mullinix subsequently amended this claim to 0.4 cfs for 20.1 acres. On February 6, 2008, two partial decrees were issued to Killgore: (1) water right No. 79-2094 for 1.5 cfs of water from the Salmon River to irrigate 130 acres with a priority date of 1966 and (2) water right No. 79-4001 for 2.6 cfs of water from Joe Creek to irrigate the same 130 acres with a priority date of 1965. On January 29, 2009, Mullinix was issued a partial decree for water right No. 79-2063 for 0.4 cfs of water from Joe Creek to irrigate 20.1 acres.

On June 10, 2010, the SRBA court upheld a Special Master's decision to set aside the partial decrees for water rights Nos. 79-2094, 79-4001, and 79-2063 and remanded the case for further proceedings. On March 25, 2011, Mullinix and Killgore executed a Settlement Agreement. The Agreement provided in relevant part:

1. Water Right No. 79-2063 claimed by Mullinix in the amount of 0.4 cfs for 20.1 acres diverted out of Joe Creek shall be decreed as disallowed.

2. Water Right No. 79-4001 has been administratively split into Water Right No. 79-14233 in the amount of 2.20 cfs for 110 acres in the name of Killgores and Water Right No. 79-14234 in the amount of 0.40 cfs for 20.1 acres in the name of Mullinix. . . .

3. Mullinix agrees to move the point of diversion for Water Right No. 79-14234 to a location on Joe Creek below the current diversion used by Killgores for Water Right No. 79-14233. Killgore and Mullinix shall coordinate with the [IDWR] on whether it is necessary to redescribe the point of diversion for their respective water rights within a quarter quarter-section. Neither party shall object to a change in the point of diversion of these two rights as long as the Mullinix point of diversion is below the Killgores' point of diversion.

4. Mullinix agrees not to make a call on any of Killgores' Water Right No. 79-14233 as long as Killgores are not diverting more from Joe Creek than allowed by Water Right No. 79-14233 and Idaho Law.

5. Water Right No. 79-2094 has been split by the [IDWR] into Water Right No. 79-14231 for 1.27 cfs on 110 acres owned by Killgores and into Water Right No. 79-14232 for 0.23 cfs on 20.1 acres owned by Mullinix. . . .

6. Mullinix shall move the point of diversion for Water Right No. 73-14232 downstream on the Salmon River to a point on Mullinix's property located in T 27 N, R 1E, Section 23, SENW. Killgores shall not object to this change in the point of diversion for Water Right No. 79-14232.

7. This is the complete agreement between the parties concerning the elements of the water rights at issue in these subcases and nothing in this agreement shall be construed as a determination or acknowledgement of any party's right to an easement, right-of-way or conveyance system.

4

On May 31, 2011, the SRBA court decreed the water rights to Mullinix and Killgore in accordance with the Agreement. The SRBA partial decrees provided that the point of diversion for Mullinix's and Killgore's water rights to Joe Creek was T27N R01E S23. In addition, the decrees provided that their Joe Creek water rights had the same priority date: April 1, 1965.

## D.       Current Proceedings to Resolve Water Conveyance

On May 25, 2012, Mullinix filed a complaint against Killgore seeking declaratory and injunctive relief and damages. Mullinix sought: (1) entry of a judgment that Mullinix had the right to connect and use Killgore's pipeline to convey water from Joe Creek in exercise of Mullinix's water right; (2) to enjoin Killgore from interference with Mullinix's use of Killgore's pipeline; and (3) damages for Killgore's tortious interference with Mullinix's water system and property rights. Killgore answered and counterclaimed for (1) quiet title to an easement for the pipeline as it crossed through Mullinix's property; (2) breach of the Settlement Agreement; (3) conversion of Killgore's water rights, point of diversion, and pipeline; (4) interference with easement and water rights; and (5) injunctive relief. Mullinix answered and filed an amended complaint with an additional claim that Killgore was required to furnish water to Mullinix pursuant to Idaho Code section 42-912.

The parties filed a joint stipulation of facts and exhibits. The Honorable John R. Stegner presided over a court trial on May 29, 30, and 31, 2013. After the district court heard closing arguments, the district court orally pronounced its findings and conclusions. The district court ruled:

> I think the real challenge here is to try to reconcile the Settlement Agreement with the Statutes and Constitution of the State of Idaho. And in order to do that, I think I have to give effect to 42-912, and Article 15, Section 4, and that means that I believe Mr. Mullinix is entitled to an injunction authorizing his access to the delivery system that is operated by the Killgores.
> With regard to the tortious injury to property claim brought by Mr. Mullinix, I find that the Killgores did tortiously injure his property.
> With regard to the Killgores' counter-claims of breach of the Settlement Agreement[,] Conversion [a]nd Interference [w]ith [t]he Easement, I also find that the Killgores have proven their case. And I find that each of those offsets the others.
> Mullinix and Killgore have engaged in self-help which I do not believe should be rewarded under the circumstances and, therefore, I'm not authorizing any damages to either side for those causes of action.
> I'm rejecting Killgores' claim for injunctive relief.

5

With regard to the -- what I would like to see, and I realize I don't always get to do what I would like to see, but here is what I would like to see -- I would like to see Mullinix put in a second weir and bubbler on [Ernest] Robinson's property.

However, I cannot order or authorize construction of a bubbler or a weir on somebody's property who wasn't a party to this lawsuit, so that presumes a written easement can be obtained by Mr. Mullinix. I don't know if that can be acquired, but that's, I think, the gravamen of the evidence, that it made the most sense to have a second weir placed in the creek and the bubbler at the same elevation as the original bubbler. This would give effect to the settlement agreement requiring [Mullinix's] point of diversion being below the Killgores' point of diversion.

The second bubbler would then have a pipe that would rejoin the Killgore pipe, which would, as the testimony indicated, increase the pressure in the original pipe. This work would have to be at the Mullinixes' expense.

I read 42-912 as giving Mullinix the ability to gain access to the pipe that runs across his property. . . .

. . . .

I'm prepared to issue an easement to the Killgore's . . . Salmon River Fruit Company to the property but not without a valid description of the property. If you want an easement . . . I need a property description. . . . and that cost of that survey would have to be borne by the Killgores.

Again, if I get my druthers, which I rarely get, I would order that a device to measure the flow of water in the pipe be undertaken by the Killgores, so that if flows fall below the 2.6 cubic feet per section that are apportioned to Killgores and Mullinix, that Killgores are then in a position to advise Mullinix to reduce his use at that time.

The district court concluded its ruling by stating:

If you want to read my remarks as saying a pox on both your houses, I wouldn't disagree with that assessment. There's a lot of unclean hands, unclean hands on both sides of this case, a lot of self-help on both sides which the law, of course, abhors. And to make it patently clear, I think this case will require significant future involvement by me to maintain some semblance of order as far as the use and distribution of water is concerned.

Anticipating future involvement with the case, the district court set a status conference for July 8, 2013.

At the July 8, 2013, status conference, the district court learned that Mullinix was unable to obtain an easement from the Robinsons. According to Mullinix, the Robinsons did not want to expose themselves to liability, violate their easement, or "be seen as taking sides" with this issue, and Killgore would not release the Robinsons from any potential liability. Mullinix explained that the issue could be solved by Killgore advising the Robinsons in writing that Killgore did not object to the easement. The district court explained:

6

[T]he testimony at trial indicated to me that the most intelligent way to deal with this issue was to have Mullinix put a point of diversion below Killgores and have a bubbler that was the same elevation as the Killgores' bubbler, and that that would have as little impact on the pressure in the system. . . . And when I have been shown engineering evidence that suggests one course of action makes the most sense, I try to implement what makes the most sense. But if the Killgores are going to prevent Mullinix from getting an easement from Robinson, then we will have to go back to square one and I'll have to order that Mullinix tie into the diversion system that's already in existence.

Killgore responded that the district court could not issue an order that allowed Mullinix to use Killgore's diversion system as that was inconsistent with the Agreement. The district court disagreed. The district court explained to Killgore:

Now, you have a choice and your client has a choice, they can either work with Mullinix and Robinson and put a new bubbler in at the same elevation as the existing bubbler with a point of diversion below Killgores' point of diversion, or I'm going to allow Mullinix to tie into Killgores' water delivery system.

The district court further clarified that it was not forcing Killgore to procure an easement for Mullinix, but, if the parties did not procure an easement or if Killgore provided no assistance, the district court would issue an order allowing Mullinix to tie into Killgore's water system. The district court set another status conference for August 5, 2013.

At the August 5, 2013, status conference, Mullinix informed the district court that Killgore still was not willing to waive any objection to the Robinsons' grant of an easement to Mullinix. Killgore agreed that Mullinix "accurately described where we are at," but also stated, "The Killgores haven't done anything to negatively affect in [sic] obtaining an easement, haven't threatened litigation or anything like that." The district court requested that Mullinix prepare an order allowing Mullinix to tie into Killgore's pipeline as it crossed Mullinix's property.

On September 23, 2013, the district court entered its findings of fact and conclusions of law. In its findings, the district court reiterated the water rights granted in the SRBA partial decrees: Mullinix had a right to 0.4 cfs and Killgore had a right to 2.2 cfs of water from Joe Creek. The district court stated that Mullinix's right was "inferior" to Killgore's right. The district court also determined:

Killgore's continued unwillingness to allow Mullinix access to the water Killgore pipes across Mullinix's property is without legal basis and will cause harm to Mullinix, which can only be remedied by an order based on the equitable powers of this Court.

Mullinix are the successors in interest to a portion . . . of water right No. 79-4001 appropriated and held by James and Josephine Killgore for use on lands

which included the Mullinix parcel. Mullinix are the current owners and successors in interest to land . . . that was held previously by both James and Josephine Killgore and Louis and Maude Weise. Under Article XV, Section 4, of the Idaho Constitution, Mullinix, as successors in interest to James and Josephine Killgore and Louis and Maude Weise, have a legal interest in the continuing water rights as guaranteed by Idaho's constitution. Under Idaho Code § 42-101, Mullinix, as successors in interest to land held previously by both James and Josephine Killgore and Louis and Ma[u]de Weise, have a legal interest in the continuing water rights as established by Idaho statute. Mullinix's right derives in large part from the settlement agreement that was entered into by Mullinix and Killgore . . . and later embodied in IDWR water right No. 79-14234.

The district court then explained that the evidence at trial showed that the best and most effective way to deliver water to Mullinix was through the second weir and bubbler system. The district court noted that adding the second bubbler and connecting that water system to Killgore's pipeline would increase pressure in the pipe to benefit both parties. The district court recognized that Mullinix was unable to obtain an easement to install a second weir, but also recognized that its decision should not be read or construed to prevent Mullinix from doing so. Absent an easement for the second weir, the district court ruled that Killgore was obligated to furnish water to Mullinix's property pursuant to Idaho Code section 42-912 because Killgore owned and controlled an irrigation works to distribute water to certain lot owners of Killgore's Horseshoe Bend Estates subdivisions.

The district court also determined that Mullinix's right to 0.4 cfs of water would decrease proportionally if the flow of water fell below 2.6 cfs. The district court further determined that Mullinix's right to water would terminate if the flow declined to 2.2 cfs or less. Finally, the district court granted Killgore an easement across Mullinix's parcel for the purpose of operating the pipeline.

On September 23, 2013, the district court entered a decree to the same effect as its findings of fact and conclusions of law. Regarding any decrease in flow, the district court stated: "Should the flow of water in the pipeline decrease to less than 2.6 [cfs], Mullinix's right will decline proportionally." The decree granted Mullinix the right to install a tap or valve on Killgore's pipeline as it crossed Mullinix's parcel. Pursuant to the decree, Mullinix was required to pay an annual delivery fee to Killgore at the same rate as the subdivision lot owners of Killgore's Horseshoe Bend Estates. Finally, the district court recognized that Mullinix and Killgore have been unable to resolve disputes between themselves and therefore retained jurisdiction over the case.

8

On October 7, 2013, Mullinix moved for reconsideration. Mullinix also moved for attorney's fees and costs. On November 1, 2013, the district court entered an order finding that Mullinix was the prevailing party and awarded costs to Mullinix. On November 1, 2013, Killgore filed a notice of appeal.

On June 16, 2014, Mullinix filed a motion to enforce the district court's decree. On July 28, 2014, the district court issued an order granting Mullinix's motion for reconsideration and Mullinix's motion to enforce the decree. This order provided that Killgore had interfered with Mullinix's water rights and had tampered or vandalized Mullinix's valve. Regarding any decrease in flow, the district court amended its decree to provide that Mullinix's right to water would decline proportionally only when Killgore put his water to full beneficial use. The district court also ruled that Killgore could not interfere with Mullinix's use of water if Killgore was not irrigating or placing the full 2.2 cfs to beneficial use. The district court provided that both parties must cooperate with the IDWR and exercise good faith in cooperating with each other.

On December 19, 2014, the Court conditionally dismissed this appeal unless the Court was provided a final judgment pursuant to Idaho Rule of Civil Procedure 54. On January 9, 2015, the Court was provided an amended judgment/decree, but this judgment also failed to satisfy Rule 54. On January 23, 2015, the Court was provided a second amended final judgment. Notably, this second amended final judgment ruled that Mullinix's claim for tortious injury to property and Killgore's counterclaims for breach of the Agreement, conversion, and interference with easement and water rights "are denied." This determination is contrary to the district court's prior oral ruling and amended judgment/decree, which found that the parties had proven their claims but the damages offset each other.

### III. ISSUES ON APPEAL

1.  Whether the district court erred by allowing Mullinix to tap Killgore's pipeline as it crossed Mullinix's property to receive water from Joe Creek pursuant to Mullinix's water right.

2.  Whether the district court erred by finding that Killgore tortiously injured Mullinix's property.

3.  Whether the district court erred by awarding costs to Mullinix as the prevailing party.

4.  Whether Mullinix is entitled to attorney's fees on appeal.

### IV. STANDARD OF REVIEW

Following a bench trial, this Court's review "is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of

fact support the conclusions of law." *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009). "[T]his Court will liberally construe the trial court's findings of fact in favor of the judgment entered" and "will not set aside a trial court's findings of fact unless the findings are clearly erroneous." *Id.* However, this Court exercises free review over matters of law and is not "bound by the legal conclusions of the trial court, but may draw its own conclusions from the facts presented." *Credit Suisse AG v. Teufel Nursery, Inc.*, 156 Idaho 189, 194, 321 P.3d 739, 744 (2014).

*U.S. Bank Nat. Ass'n N.D. v. CitiMortgage, Inc.*, 157 Idaho 446, 451, 337 P.3d 605, 610 (2014) (alteration in original) (citation omitted).

## V. ANALYSIS

Before we review the issues raised by Killgore, we must dispose of two issues raised by Mullinix. First, Mullinix argues that this Court lacks jurisdiction because the district court has not issued an order on Mullinix's motion for reconsideration. Second, Mullinix requests that we offer guidance to the district court for future disputes on the issue of beneficial use of the parties' water rights. About twenty days after Mullinix filed his brief with this Court, however, the district court issued a written order on Mullinix's motion for reconsideration. In this order, the district court addressed the issue of beneficial use. We therefore conclude that Mullinix's jurisdiction argument and his request for guidance are both moot issues. *See Arambarri v. Armstrong*, 152 Idaho 734, 739, 274 P.3d 1249, 1254 (2012). "This Court does not decide moot issues." *Suter v. Biggers*, 157 Idaho 542, 550, 337 P.3d 1271, 1279 (2014). We now turn to Killgore's arguments on appeal.

**A.      The district court properly determined that Mullinix could tap Killgore's pipeline as it crossed Mullinix's property to receive water from Joe Creek pursuant to Mullinix's water right.**

To briefly review, the district court initially ordered Mullinix to install a weir for a separate point of diversion below Killgore's point of diversion as required by the Agreement. The district court then found that Mullinix was unable to comply with that order. Consequently, the district court determined that Mullinix did not have to install a second weir and instead could receive water directly from Killgore's pipeline as it crossed Mullinix's property. We conclude that the district court reached the correct result.

     1.      The water and ditch rights appurtenant to Mullinix's property permit the receipt of water from Joe Creek to the property with Killgore's pipeline.

Idaho Code section 42-101 states in relevant part:

All the waters of the state, when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state are declared to be the property of the state, . . . and the right to the use of any of the waters of the state for useful or beneficial purposes is recognized and confirmed; and *the right to the use of any of the public waters which have heretofore been or may hereafter be allotted or beneficially applied, shall not be considered as being a property right in itself, but such right shall become the complement of, or one of the appurtenances of, the land or other thing to which, through necessity, said water is being applied*; and *the right to continue the use of any such water shall never be denied or prevented* from any other cause than the failure on the part of the user thereof to pay the ordinary charges or assessments which may be made to cover the expenses for the delivery of such water.

I.C. § 42-101 (emphasis added). The pertinent law for this case is contained in the last two clauses of the statute, which are italicized above. These clauses provide that the right to use water is an appurtenance of the land to which the water is beneficially used and that the right to the continued use of such water shall not be denied or prevented. I.C. § 42-101. This Court has recognized the continued water right guaranteed by Idaho Code section 42-101: "Appellants' decreed water right constitutes real property; such right is appurtenant to appellants' lands to which the water represented thereby has been beneficially applied." *Anderson v. Cummings*, 81 Idaho 327, 335, 340 P.2d 1111, 1115 (1959). In sum, a water right is appurtenant to the land and transfers with the conveyance of the land.

"In Idaho, ditch rights and water rights are separate and independent from one another." *Zingiber Inv., LLC v. Hagerman Highway Dist.*, 150 Idaho 675, 680, 249 P.3d 868, 873 (2011), *overruled on other grounds by City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012). "[A] ditch right for the conveyance of water is recognized as a property right apart from and independent of the right to the use of the water conveyed therein. Each may be owned, held and conveyed independently of the other." *Simonson v. Moon*, 72 Idaho 39, 47, 237 P.2d 93, 98 (1951). Although a water right and a ditch right are separate and independent, the right to a ditch and the right to water are both appurtenances to the land. "Ordinarily water *and the ditches* through which the same is conveyed to lands, become appurtenant to the land when used upon or in connection with such land." *Molony v. Davis*, 40 Idaho 443, 448–49, 233 P. 1000, 1001 (1925) (emphasis added). Similar to a water right, a ditch conveying water to land is appurtenant to the land and transfers with the conveyance of the property.

The water and ditch rights continue with the property even if the property is divided. "A division of a tract of land to which water is appurtenant, without segregating or reserving the

11

water right, works a division of such water right in proportion as the land is divided." *Crow v. Carlson*, 107 Idaho 461, 467, 690 P.2d 916, 922 (1984) (quoting *Hunt v. Bremer*, 47 Idaho 490, 493, 276 P. 964, 965 (1929)). Such water or ditch rights may be conveyed separate and apart from the land only if "such was the intention of the parties to the conveyance." *Molony*, 40 Idaho at 449, 233 P. at 1001.

Based on this authority, we hold that Mullinix obtained a ditch right and a portion of the Joe Creek water right as appurtenances to the property when Mullinix was conveyed the Killgore-Mullinix parcel. These rights were never expressly reserved and thus they transferred with each conveyance of the land. Therefore, we affirm the district court's result in allowing Mullinix to tap Killgore's pipeline as it crossed Mullinix's property because a portion of Joe Creek water right No. 79-4001 and the ditch (now a pipeline) were transferred with the property conveyed to Mullinix. *Nampa & Meridian Irrigation Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003) ("Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory.")

Killgore's argument contesting the existence of a water right on the Killgore-Mullinix parcel is foreclosed by virtue of James's Joe Creek water right No. 79-4001 and the SRBA partial decrees. In a contested water rights case, this Court held that a water rights decree was "conclusive proof of diversion of the water, and of application of the water to beneficial use, *i.e.*, the decree is res judicata as to the water rights at issue herein." *Crow*, 107 Idaho at 465, 690 P.2d at 920. This Court explained:

> Our holding of the presumption of accuracy of the decree is in keeping with the judicial policy of deterring the reopening of judgments long after cases are decided and the files are closed. Our holding is also consistent with the ruling of the trial judge, in which he stated that a decree affixing water rights and establishing priorities is binding on all parties, and that such decree fixes the dates of priority *and the land to which the water is appropriated.*

*Id.* (citation omitted). In this case, the SRBA partial decrees accurately describe the Mullinix and Killgore property to which the water is appropriated. The decrees also provide the same priority date: April 1, 1965. This date is in reference to the Joe Creek water right No. 79-4001 acquired by James Killgore, which was "split" to provide for the current Joe Creek water rights of Mullinix and Killgore. Due to the binding nature of these decrees, Mullinix's SRBA partial decree is conclusive proof of his right to a portion of the water from James's Joe Creek water right No. 79-4001 and the application of that water for beneficial use. Killgore cannot now

challenge James's Joe Creek water right No. 79-4001, its apportionment to Mullinix's property, or the beneficial use of that water.

Furthermore, Killgore's argument that the piping of the ditch extinguished Mullinix's water right or ditch right is unavailing. In *Keyser v. Morehead*, the plaintiff and defendant were taking water from a common lateral ditch. 23 Idaho 501, 503, 130 P. 992, 993 (1913). As a necessary improvement, the defendant removed the flume and piped the ditch. *Id.* at 503–04, 130 P. at 993. The Court recognized that there was no dispute as to the parties' respective water rights. *Id.* at 503, 130 P. at 993. The Court also recognized that the parties "acquired the lateral ditch as co-owners and used the same as tenants in common, and that each is entitled to the use of the same for the carriage of water to irrigate their respective lands." *Id.* at 504–05, 130 P. at 993. Based on these facts, the Court ruled that "[b]y making this improvement the pipe became a part of the ditch and the plaintiff being an owner in the ditch and in the flume removed, likewise became an owner in the pipe made a part of the ditch." *Id.* at 507–08, 130 P. at 994. As an owner of the pipe, the Court held that the plaintiff was entitled to a decree declaring his title to the pipe as a part of the ditch and his right to convey water through the pipe, conditioned upon his contribution to the cost of the improvement. *Id.* at 508, 130 P. at 994–95. Similar to the facts in *Keyser*, the parties' water rights in this case cannot be disputed due to the SRBA partial decrees. Likewise, as we held above, Mullinix acquired a right to the ditch upon conveyance of the Killgore-Mullinix parcel. It follows under *Keyser* that Mullinix's right to use the ditch extends to the pipeline. *See id.* at 507–08, 130 P. at 994–95. Killgore's piping of the ditch did not extinguish the water right and ditch right appurtenant to the Killgore-Mullinix parcel.[1]

In summary, the district court correctly ordered that Mullinix could tap Killgore's pipeline as it crossed Mullinix's property because Mullinix obtained an appurtenant water right and ditch right upon conveyance of the Mullinix-Killgore parcel. We affirm the district court's second amended final judgment granting Mullinix the right and authority to divert 0.4 cfs of water from Killgore's pipeline at a location on Mullinix's property.

    2.    <u>The district court properly exercised its equitable powers to allow Mullinix to use Killgore's pipeline without a separate point of diversion.</u>

---

[1] Unlike the plaintiff in *Keyser*, Mullinix's use of the pipe is not conditioned upon his contribution to the cost of the improvement from a ditch to a pipe. Killgore has made no claim for a partial reimbursement from Mullinix for the cost of the improvement. Such a claim would be unwarranted in light of the evidence in the record that Killgore received financial assistance from the Soil Conservation Service to pipe the ditch. There is no evidence in the record to suggest that Killgore has incurred any cost to pipe the ditch.

Killgore argues that the Agreement bars Mullinix from using Killgore's point of diversion or pipeline to receive water from Joe Creek. We reject Killgore's argument. The district court's findings offer two relevant facts for this issue: (1) Killgore was at fault for preventing Mullinix's compliance with the separate point of diversion clause in the Agreement and (2) Mullinix was harmed by his inability to exercise his Joe Creek water right. Due to Killgore's interference with Mullinix's water right, the district court acted in equity to permit Mullinix to use Killgore's pipeline without a separate point of diversion. We find no error with the district court's exercise of its equitable powers. We affirm the district court's decision to set aside the separate point of diversion clause of the Agreement until Killgore ceases to prevent Mullinix's compliance with the Agreement and also ceases to interfere with Mullinix's water and ditch rights.

3.      The district court erred by applying Idaho code section 42-912.

The district court also determined that Killgore was an owner and operator of an irrigation works for distributing water to certain lot owners of Killgore's Horseshoe Bend Estates subdivisions. Based on this determination, the district court concluded that Killgore was obligated to furnish water to Mullinix's property pursuant to Idaho Code section 42-912. Idaho Code section 42-912 states in relevant part:

> Any person, company or corporation owning or controlling any canal or irrigation works for the distribution of water under a sale or rental thereof, shall furnish water to any person or persons owning or controlling any land under such canal or irrigation works for the purpose of irrigating such land or for domestic purposes . . . .

I.C. § 42-912. We hold that this statute is inapplicable to Killgore's distribution of water to certain lot owners of Killgore's Horseshoe Bend Estates subdivisions. Killgore is not a person, company, or corporation "owning or controlling any canal or irrigation works for the distribution of water." I.C. § 42-912. Therefore, the district court erred by stating in its findings and conclusions that Mullinix was entitled to have Killgore furnish water to Mullinix's property pursuant to Idaho Code section 42-912. Along the same lines, we hold that the district court erred by ordering in its second amended final judgment that Mullinix pay Killgore an annual fee[2] for the delivery of water. Since Killgore is not obligated under Idaho Code section 42-912 to deliver water to Mullinix, Mullinix is not obligated to pay a fee. We vacate the portion of the district

---

[2] The district court based this fee on the fee charged by Killgore to the lot owners of Killgore's Horseshoe Bend Estates subdivisions.

14

court's second amended final judgment ordering Mullinix to pay an annual fee to Killgore. No other part of the second amended final judgment is vacated.

    4.    <u>We will not address the application of Article XV, Section 4 of the Idaho Constitution.</u>

The district court also reasoned that Mullinix, as a successor in interest to the Mullinix-Killgore parcel, had a legal interest in the continuing water rights as guaranteed by Article XV, Section 4 of the Idaho Constitution. Killgore argues that this decision by the district court was in error. "It is well established that when a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issue unless it is necessary for a determination of the case." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 710, 791 P.2d 1285, 1289 (1990). Here, it is unnecessary to address the application of Article XV, Section 4 because we have resolved this case on other grounds as discussed above.

**B.    Any claim of error regarding the district court's finding that Killgore tortiously injured Mullinix's property is moot.**

Killgore submits that the district court erred by finding that Mullinix prevailed on his claim of tortious injury to property. After Killgore filed his opening brief and reply brief with this claim of error, the district court issued a second amended final judgment wherein the district court ruled that Mullinix's claim of tortious injury to property was "denied." Thus, the requested relief has been provided to Killgore in the district court. Killgore has no adverse ruling from which to appeal and there is no specific relief that could be granted by this Court. This issue is moot.[3] *See Arambarri v. Armstrong*, 152 Idaho 734, 739, 274 P.3d 1249, 1254 (2012).

**C.    The district court properly awarded costs to Mullinix.**

Killgore argues that the district court erred by awarding costs to Mullinix because Mullinix should not have been the prevailing party below. Because we affirm the district court's decision, we also affirm the district court's award of costs to Mullinix as the prevailing party.

**D.    We decline to award Mullinix attorney's fees on appeal.**

Mullinix requests attorney's fees and costs on appeal pursuant to Idaho Appellate Rule 40 and 41 and Idaho Code section 12-121. Under Idaho Code section 12-121, the Court

> will not award attorney fees on appeal under that statute if the losing party brought the appeal in good faith and presented a genuine issue of law. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). "In

---

[3] The district court also ruled in its second amended final judgment that Killgore's claims of breach, interference, and conversion were "denied." Killgore has not challenged this ruling.

normal circumstances, attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Id.*

*Clearwater REI, LLC v. Boling*, 155 Idaho 954, 962, 318 P.3d 944, 952 (2014). This appeal presents genuine issues of law. Thus, we do not award Mullinix attorney's fees on appeal.

## VI. CONCLUSION

We vacate the district court's order that Mullinix pay an annual water delivery fee to Killgore. In all other respects, the district court's second amended final judgment is affirmed. This case is remanded for further proceedings consistent with this opinion. Costs on appeal to Mullinix.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.